IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee*,

*v.*

KYLE ANDREW STOLL,
*Appellant*.

No. 2 CA-CR 2015-0280
Filed May 23, 2016

---

Appeal from the Superior Court in Cochise County
No. CR201300537
The Honorable James L. Conlogue, Judge

**VACATED AND REMANDED**

---

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Kathryn A. Damstra, Assistant Attorney General, Tucson
*Counsel for Appellee*

Thomas C. Holz, Bisbee
*Counsel for Appellant*

---

**OPINION**

---

Judge Miller authored the opinion of the Court, in which Presiding Judge Vásquez and Chief Judge Eckerstrom concurred.

---

M I L L E R, Judge:

**¶1**      Kyle Stoll was convicted of aggravated driving under the influence with a blood alcohol concentration of .08 or more while his license was suspended, canceled, or revoked, and sentenced to four months' imprisonment followed by five years of supervised probation.  He argues the trial court erred in denying his motion to suppress evidence obtained during the traffic stop, which was initiated because the light illuminating the license plate emitted white light visible from the rear of the vehicle.  We conclude the officer misinterpreted the relevant statutes and the mistake of law was not objectively reasonable; therefore, the stop was not based on reasonable suspicion and the motion to suppress should have been granted.  We vacate the conviction and sentence, and we remand for further proceedings.

**Factual and Procedural Background**

**¶2**      In reviewing a trial court's ruling on a motion to suppress, we consider only the evidence presented at the suppression hearing and view it in the light most favorable to sustaining the trial court's ruling. *See State v. Moreno*, 236 Ariz. 347, ¶ 2, 340 P.3d 426, 428 (App. 2014).  One evening in January 2013, two Cochise County sheriff's deputies were in a convenience store when they smelled the odor of burnt marijuana in the proximity of two men, later identified as Stoll and his friend.  When the two men left the store and began to drive away in an SUV, the deputies followed and stopped the SUV one or two blocks away.  The deputies observed white light from the lamp illuminating the license plate.  It was a standard lamp, properly functioning, and operated in the usual manner.  Nothing in the record indicates Stoll was issued a

traffic citation.  At the suppression hearing, however, the deputies testified they believed white light visible from a vehicle moving forward violated A.R.S. § 28-931(C).[1]

¶3        During the stop, the deputies detected the odor of alcohol, and observed that Stoll had bloodshot watery eyes and a flushed face.   A horizontal gaze nystagmus test suggested the presence of alcohol in his system, and a breathalyzer test measured his alcohol concentration at .165.  The deputies arrested him.

¶4        Stoll moved to suppress the evidence seized during the stop, arguing that the deputies' belief about white light from a license plate light was not supported by any statute.  The state contended the stop was supported by reasonable suspicion because the SUV's license plate lamp, though functioning properly and apparently as designed, did not have an opaque casing entirely shrouding its back, and thus emitted some white light to the rear of the vehicle.   After taking the matter under advisement, the trial court granted Stoll's motion to suppress.  Its ruling that the license plate light did not violate Title 28 was based on specific facts:

> There was no evidence that the [license plate] light created any public safety or

---

[1] The state advanced two other possible grounds for reasonable suspicion at the suppression hearing, but they are not at issue here.  First, the state noted that at the convenience store, the deputies had plainly smelled burnt marijuana in close proximity to the SUV's two occupants.  However, the trial court rejected this as a basis for reasonable suspicion, finding "the odor of burnt marijuana emanating from the area where Defendant and another person were standing, prior to driving, did not justify the later stop of Defendant's vehicle."   The state does not challenge this ruling on appeal.  Second, the SUV had slightly oversized after-market rear tires, but no mud flaps; at the time of the stop the deputies believed this was a violation of A.R.S. § 28-958.01.   However, at the suppression hearing, both deputies conceded there was in fact no mud flap violation because the vehicle was an SUV and not a lifted pickup truck.  *See* § 28-958.01(C)(1).

community welfare concern. There was no evidence that the lamp obstructed the vision of other drivers or that other drivers might confuse the license lamp with a head light or backup light. The white lamp was simply "visible" from the rear of Defendant's vehicle.

¶5 In December 2014, shortly after the United States Supreme Court issued its decision in *Heien v. North Carolina*, ___ U.S. ___, 135 S. Ct. 530 (2014), the state moved for reconsideration of the suppression ruling, arguing the deputies made a reasonable mistake of law in interpreting § 28-931(C) when they concluded Stoll's license plate lamp violated state law. Stoll contended the statute clearly and unambiguously compels a conclusion that the lamp was not in violation, and the deputies' interpretation of the statute was not objectively reasonable. At the hearing on the motion for reconsideration, a patrol commander from the sheriff's department testified that the department had trained deputies for years that any rear-facing white light on a vehicle other than a backup lamp violated § 28-931(C). The trial court granted the state's motion to reconsider, vacating its earlier suppression order. The court found "the Officer was objectively reasonable in applying the laws [as] he believed [them] to be at the time, particularly given his training in the Department."

¶6 Stoll filed a motion to reconsider the new ruling, which the trial court denied. A bench trial followed, and Stoll now appeals the resulting conviction and sentence. Our jurisdiction is pursuant to A.R.S. §§ 13-4031 and 13-4033(A).

## Whether the License Plate Light Violated Arizona Law

¶7 Although the trial court did not vary from its initial ruling that Stoll's license plate lamp did not violate Title 28, we address that conclusion because if we determine an Arizona statute prohibits a license plate lamp from emitting any white light to the rear, then the officer had reasonable suspicion to investigate a violation of such statute in this case. *See, e.g.*, *State v. Teagle*, 217 Ariz. 17, ¶ 25, 170 P.3d 266, 272-73 (App. 2007) (defining reasonable

suspicion). We review issues of statutory interpretation de novo. *Dobson v. McClennen*, 238 Ariz. 389, ¶ 7, 361 P.3d 374, 376 (2015). When interpreting a statute, our chief duty is to determine and effectuate the legislature's intent. *See Glazer v. State*, 237 Ariz. 160, ¶ 12, 347 P.3d 1141, 1144 (2015). "If the statute is subject to only one reasonable interpretation, we apply it without further analysis." *Id.* However, if it is ambiguous, we may consider other factors such as "'the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose.'" *Id.*, *quoting Wyatt v. Wehmueller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991).

¶8        Arizona law requires that a lamp, either separate or incorporated in the tail light, be placed on a vehicle "in a manner that illuminates with a white light the rear license plate and renders it clearly legible from a distance of fifty feet to the rear." A.R.S. § 28-925(C). The Arizona Revised Statutes also provide:

> All lighting devices and reflectors mounted
> on the rear of any vehicle shall display or
> reflect a red color, except that:
>
> 1.  The stoplight or other signal device may
>     be red, amber, or yellow. . . .
>
> 2.  The light illuminating the license plate
>     or the light emitted by a backup lamp
>     shall be white.

§ 28-931(C). Simply stated, § 28-931(C)(2) requires only that the license plate lamp and backup lamp shall cast white light as opposed to red.

¶9        Our reading of § 28-931(C) is in accord with *State v. Patterson*, in which the Court of Appeals of Idaho examined a materially identical statute to determine legislative intent. 97 P.3d 479, 482 (Idaho Ct. App. 2004). The Idaho statute provided:

> All lighting devices and reflectors mounted
> on the rear of any vehicle shall display or
> reflect a red color, except the stoplight or

> other signal device, which may be red,
> amber, or yellow, and except that the light
> illuminating the license plate shall be white
> and the light emitted by a back-up lamp
> may be white, amber, or red.

*Id.*, *quoting* Idaho Code § 49-910. The Idaho court observed the statutory language was "plain and unambiguous" that the purpose of the section pertained to the color of rear-facing lamps. *Id.*; *accord Williams v. State*, 853 P.2d 537, 538 (Alaska Ct. App. 1993) (similar statute requires that taillights emit only red light). We recognize that in *Patterson* and *Williams* the drivers were stopped because broken taillights emitted white light as well as red, but the respective discussions do not provide any support for the state's general contention that the purpose of such a statute is to regulate the direction of light as opposed to the color of lamps.

**¶10** There is no dispute that the license plate lamp on Stoll's SUV illuminated the license plate with a white light. Because this lamp fell within an express exception in § 28-931(C)(2), there was no legally correct basis for the deputy to investigate a violation of § 28-931(C). The trial court correctly decided this issue in its original suppression order.

**¶11** Having concluded Stoll's license plate lamp did not violate § 28-931(C), we briefly consider whether it violated any related statute. We first note the factual findings the trial court made in its original suppression order—findings unaffected by the court's later decision to reconsider the suppression order on unrelated legal grounds. The court found Stoll's license plate lamp was functioning properly, and that it rendered the license plate visible from the rear of the vehicle as required by § 28-925(C). The court further found "[t]here was no evidence that the light created any public safety or community welfare concern," "no evidence that the lamp obstructed the vision of other drivers," and no evidence "that other drivers might confuse the license lamp with a head light or backup light." We defer to these factual findings because they are supported by reasonable evidence and are not clearly erroneous. *See State v. Moore*, 222 Ariz. 1, ¶ 17, 213 P.3d 150, 156 (2009).

¶12 We emphasize, therefore, that this is not a case in which the license plate lamp was missing or was not operating. *See, e.g.*, *State v. Kjolsrud*, Nos. 2 CA-CR 2015-0230, 2 CA-CR 2015-0231, ¶¶ 2, 11 (consolidated), 2016 WL 1085229 (Ariz. Ct. App. Mar. 18, 2016) (unilluminated license plate is proper basis for traffic stop under A.R.S. § 28-925(C)); *see also State v. Womack*, 174 Ariz. 108, 116, 847 P.2d 609, 617 (App. 1992) (Lankford, J., dissenting) ("Defendant does not contest that the officer was entitled to stop defendant's vehicle because of the missing or inoperable tail light."), *citing* § 28-925. This is not a case in which the light emitted by the license plate lamp caused a glare that made the license plate illegible. *See* § 28-925(C). Nor is it a case in which the lamp was operating in such a way as to "give[] rise to the risk of dangerous confusion with a back-up lamp." *See Williams v. State*, 28 N.E.3d 293, ¶ 8 (Ind. Ct. App. 2015) ("obvious safety issues" arose where one tail lamp displayed red light and other was broken and displayed mostly white light; it was difficult to tell if car was in drive or reverse); *see also* A.R.S. § 28-940(3) (allowing vehicle to have "[n]ot more than two backup lamps," which are "not [to] be lighted when the motor vehicle is in forward motion"); § 28-931(C)(2) (light emitted by backup lamp shall be white). And it is also not a case in which the defendant's vehicle was generally "in an unsafe condition that endangers a person." A.R.S. § 28-921(A)(1)(a); *cf. United States v. Harris*, No. 3:13CR17/MCR, 2013 WL 3339055, at *7 (N.D. Fla. July 2, 2013) (no reasonable suspicion of violation of unsafe-condition statute where no evidence suggested white light emitted from cracked taillight actually impaired officer's vision or created safety hazard). In short, we agree with Stoll that his license plate lamp was in compliance with all relevant Arizona law. No Arizona statute prohibits a license plate lamp from emitting some white light to the rear of a vehicle, without more. Therefore, the deputy did not articulate a legally correct statutory basis to investigate Stoll's vehicle.

### Whether the Deputies' Mistake of Law Was Reasonable

¶13 The state maintains that even if Stoll's license plate lamp did not violate § 28-931, the traffic stop nevertheless was constitutional because the deputies reasonably believed the lamp violated the statute. We review the trial court's ruling on a motion

to suppress, and on a motion for reconsideration, for an abuse of discretion. *State v. King*, 180 Ariz. 268, 279, 883 P.2d 1024, 1035 (1994) (motion for reconsideration); *State v. Sanchez*, 200 Ariz. 163, ¶ 5, 24 P.3d 610, 612 (App. 2001) (motion to suppress). An error of law is an abuse of discretion. *See State v. Bernini*, 222 Ariz. 607, ¶ 14, 218 P.3d 1064, 1069 (App. 2009).

¶14     The Fourth Amendment forbids "unreasonable searches and seizures." U.S. Const. amend. IV. The protection extends to a brief investigatory stop of a person or vehicle, which is constitutional at its inception only if supported by "an articulable, reasonable suspicion . . . that the suspect is involved in criminal activity." *Teagle*, 217 Ariz. 17, ¶ 20, 170 P.3d at 271-72.

¶15     In *Heien v. North Carolina*, the United States Supreme Court held reasonable suspicion supporting a traffic stop can rest upon a reasonable mistake of law. ___ U.S. at ___, 135 S. Ct. at 536. If a law enforcement officer makes a stop based on a reasonable mistake of law, "there [is] no violation of the Fourth Amendment in the first place." *Id.* at ___, 135 S. Ct. at 539. The Court emphasized, however, that "[t]he Fourth Amendment tolerates only *reasonable* mistakes" of law, and "those mistakes . . . must be *objectively* reasonable." *Id.*; *accord Moreno*, 236 Ariz. 347, ¶ 10, 340 P.3d at 430-31. Our inquiry is exclusively objective—the court will not examine "the subjective understanding of the particular officer involved." *Heien*, ___ U.S. at ___, 135 S. Ct. at 539. If the statute the officer interpreted mistakenly "is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake. But if not, not." *Id.* at ___, 135 S. Ct. at 541 (Kagan, J., concurring).

¶16     The state argues a reasonable officer could have believed Stoll's license plate lamp violated § 28-931(C) because its chrome housing did not cover the whole rear side of the translucent lens, thus allowing some direct white light to be visible at the rear of the vehicle. The state's argument focuses on the different words the legislature used to describe the two white lights permitted on the rear of a vehicle: "[t]he light *illuminating* the license plate" and "the

8

light *emitted by* a backup lamp."[2] § 28-931(C)(2) (emphasis added). The state urges that a reasonable reader could conclude the phrase "the light illuminating the license plate" refers to the visible light shining on the license plate from the license plate lamp, rather than the license plate lamp itself. Under this reading, any white light the license plate lamp "emit[s]," or sends out, that does anything other than "illuminat[e] the license plate," is in violation of § 28-931(C)'s general rule that rear-mounted lighting devices shall display or reflect a red color. The implication is that white light shining from the license plate lamp directly to the rear is in violation, whereas white light reflected off of the license plate before shining to the rear is not.

¶17        The state's interpretation distinguishing direct light from reflected light lacks a textual basis. In fact, by its terms, § 28-931(C) regulates the color of rear lamps without regard to whether their light is "display[ed] or reflect[ed]." The statute only regulates the color of rear-facing lights and we decline the state's implicit request to add words to it. *See Arpaio v. Steinle*, 201 Ariz. 353, ¶ 1, 35 P.3d 114, 115 (App. 2001).

¶18        In addition, the state offers no basis to distinguish white light illuminating the license plate from white light the lamp emits toward the front of the vehicle that does not happen to fall on the license plate itself. Under the state's reading, unless a vehicle's license plate lamp is shielded with such precision as to emit white light only onto the license plate itself and nowhere else—not even elsewhere on the rear of the vehicle—the lamp does not comply with § 28-931(C). The state provides no authority for this reading other than the deputies' own interpretation. Furthermore, "that possibility proves too much." *United States v. Flores*, 798 F.3d 645,

---

[2]The trial court never departed from its initial conclusion that § 28-931(C)(2) regulates lamp color rather than light direction. On reconsideration, however, the court stated that "one could say that the statute is ambiguous because there are two different terms used; one is illuminating, one is emitting." The court reasoned that the ambiguity and the incorrect training meant that the deputies' mistake of law had been objectively reasonable under *Heien*.

649-50 (7th Cir. 2015). It would follow that virtually every vehicle on our streets is in violation of § 28-931(C) and could be stopped any time it is dark outside. *Cf. Flores*, 798 F.3d at 649-50 (suspicion based on interpretation of license plate frame statute that "would justify stopping any of the vast number of cars driven lawfully but affixing plates with the ubiquitous frames like the one in this case" held not reasonable). We must avoid a construction of § 28-931(C) that leads to an absurd result. *See State v. Estrada*, 201 Ariz. 247, ¶ 16, 34 P.3d 356, 360 (2001) ("[W]e interpret and apply statutory language in a way that will avoid an untenable or irrational result.").

**¶19** The state further argues the deputies' reading is reasonable because other drivers could confuse a license plate lamp emitting white light directly to the rear for an illuminated backup lamp, creating a risk that they might incorrectly conclude the vehicle is in reverse. *See* § 28-940(3) ("[A] backup lamp shall not be lighted when the motor vehicle is in forward motion."); *see also* § 28-931(C)(2) (backup lamp and license plate light both white). This construction effectively prohibits any white light shining directly to rear while the vehicle is moving forward. However, § 28-931(C) is to the contrary because it exempts the license plate lamp from the general injunction that rear-mounted lighting devices shall be red. No alternative reading is reasonable.[3] *Cf. Harris*, 2013 WL 3339055,

---

[3] Even assuming for the sake of argument that § 28-931 is ambiguous, as the state contends, the section's title assists us in resolving the ambiguity. *See Florez v. Sargeant*, 185 Ariz. 521, 524, 917 P.2d 250, 253 (1996) (statutory section headings, though not law, can help resolve ambiguities). Section 28-931 is entitled "Lamp colors." The statute regulates the color of lamps, not the trajectory of light emitted by particular lamps. *See id.* To the extent the statute is ambiguous, resolving the ambiguity does not require the sort of "hard interpretive work" that would suggest the deputies' mistake was reasonable. *Heien*, ___ U.S. at ___, 135 S. Ct. at 541 (Kagan, J., concurring); *cf. id.* at ___, 135 S. Ct. at 540 (majority opinion) (noting both majority and dissenting opinions of state supreme court in *Heien* agreed statute at issue there could reasonably be read in two ways).

at *2 (materially identical Florida statute "requires that all rear-mounted lights display or reflect a red color . . . [not] that there be no emission of white light").

¶20 We agree with the Seventh Circuit's reasoning that "*Heien* does not support the proposition that a police officer acts in an objectively reasonable manner by misinterpreting an *unambiguous* statute." *United States v. Stanbridge*, 813 F.3d 1032, 1037 (7th Cir. 2016); *compare United States v. Alvarado-Zarza*, 782 F.3d 246, 249-50 (5th Cir. 2015) (mistake of law not objectively reasonable where statute is "unambiguous" and "facially gives no support" to officer's interpretation), *with Heien*, ___ U.S. at ___, 135 S. Ct. at 540 (mistake of law objectively reasonable where ambiguous statutory language, not yet interpreted by courts, fairly allowed two different readings). Nor does the testimony of the patrol commander at the hearing on the motion for reconsideration regarding officer training affect our analysis. As Justice Kagan noted in *Heien*, "an officer's reliance on 'an incorrect memo or training program from the police department' makes no difference" for purposes of our strictly objective inquiry. ___ U.S. at ___, 135 S. Ct. at 541 (Kagan, J., concurring), *quoting State v. Heien*, 737 S.E.2d 351, 360 (N.C. 2012) (Hudson, J., dissenting); *accord id.* at ___, 135 S. Ct. at 539-40 (majority opinion). Put another way, the fact that the department had trained its officers in a way that permitted a misreading of § 28-931 does not make that misreading objectively reasonable. *See Stanbridge*, 813 F.3d at 1037; *see also Heien*, ___ U.S. at ___, 135 S. Ct. at 539-40 ("[A]n officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce."). Accordingly, we conclude the trial court erred in finding the officer's interpretation of the statute objectively reasonable under *Heien*.[4]

---

[4]Because we agree with Stoll's argument under the Fourth Amendment of the United States Constitution, we need not address his alternative argument invoking Article II, § 8 of the Arizona Constitution.

## Disposition

**¶21** We vacate Stoll's conviction and sentence, reverse the grant of the state's motion for reconsideration, and remand for further proceedings consistent with this decision.