IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

———————————————

THE STATE OF ARIZONA,
*Appellee,*

*v.*

FRANCISCO FLORES HUEZ JR.,
*Appellant.*

No. 2 CA-CR 2015-0381
Filed August 12, 2016

———————————————

Appeal from the Superior Court in Pima County
No. CR20151278001
The Honorable Javier Chon-Lopez, Judge

**REMANDED**

———————————————

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Mariette S. Ambri, Assistant Attorney General, Tucson
*Counsel for Appellee*

Steven R. Sonenberg, Pima County Public Defender
By David J. Euchner, Assistant Public Defender, Tucson
*Counsel for Appellant*

**OPINION**

Presiding Judge Howard authored the opinion of the Court, in which Judge Espinosa and Judge Staring concurred.

H O W A R D, Presiding Judge:

**¶1**     After a jury trial, Francisco Florez Huez Jr. was convicted of possession of marijuana and sentenced to a nine-month prison term.  He challenges the trial court's denial of his motion to suppress evidence, arguing the officer did not have reasonable suspicion to effectuate the investigatory stop which resulted in the discovery of marijuana.  Because the court erred, we remand for further proceedings consistent with this opinion.

## Factual and Procedural Background

**¶2**     "In analyzing a ruling on a motion to suppress, we consider 'only the evidence presented at the suppression hearing,'" *State v. Hummons*, 227 Ariz. 78, ¶ 2, 253 P.3d 275, 276 (2011), *quoting State v. Garcia*, 224 Ariz. 1, ¶ 6, 226 P.3d 370, 376 (2010), and "[w]e view the facts in the light most favorable to support the trial court's ruling on the motion to suppress," *id.*, *quoting State v. Cook*, 115 Ariz. 188, 192, 564 P.2d 877, 881 (1977).  In March 2015, a Tucson Police Department (TPD) officer saw Huez riding his bicycle on a raised dirt area adjacent to a roadway in Tucson.  The officer stopped Huez because he suspected Huez was violating the law by riding his bicycle on the sidewalk as well as on the left side of a roadway, in violation of A.R.S. § 28-815, and Tucson City Code ("the Code") § 5-2 (1953); *see also* A.R.S. § 28-812.  During the ensuing investigation, the officer discovered Huez had outstanding warrants and arrested him.  Another officer, who arrived sometime during the stop, conducted a search incident to arrest which produced the evidence that Huez attempted to suppress below.

**Legality of the Stop**

¶3        Huez first argues the trial court erred by denying his motion to suppress on the ground that the officer lacked reasonable suspicion for the stop because Huez's conduct could not constitute a traffic violation.  "We review a denial of a motion to suppress for an abuse of discretion, but review constitutional issues de novo." *State v. Salcido*, 238 Ariz. 461, ¶ 6, 362 P.3d 508, 511 (App. 2015), *quoting State v. Gonzalez*, 235 Ariz. 212, ¶ 7, 330 P.3d 969, 971 (App. 2014).  "Interpretation of a statute is a question of law, which we review de novo." *Id., quoting State v. Starr*, 222 Ariz. 65, ¶ 14, 213 P.3d 214, 218 (App. 2009).

¶4        "A traffic stop must be based on an officer's articulable, reasonable suspicion that the person has committed a traffic violation." *Id.* ¶ 7.  Huez was cited for a violation of § 28-815(A), which reads:  "A person riding a bicycle on a roadway at less than the normal speed of traffic at the time and place and under the conditions then existing shall ride as close as practicable to the right-hand curb or edge of the roadway."  Huez could only be cited for such a violation if he was riding his bicycle on "a roadway." *Id.*  A "[r]oadway" is defined as "that portion of a highway that is improved, designed or ordinarily used for vehicular travel, exclusive of the berm or shoulder."  A.R.S. § 28-601(22).

¶5        The undisputed facts establish conclusively that Huez was not riding his bicycle on a roadway.  At the suppression hearing, the TPD officer explained that when he first saw him, Huez was traveling east in the "sidewalk area up off the road."  The officer clarified that there was no actual sidewalk, but that Huez was riding in the area "where a sidewalk would be if there was one."  The officer further testified that Huez was riding "over the curb in the dirt area."  The officer's citation of Huez was based on his understanding that Huez had "to be going with the flow of traffic."  It is clear that Huez was not "on a roadway" for the purposes of § 28-815(A).  Thus, the officer could not have had a reasonable suspicion that Huez was riding on the wrong half of a roadway.

¶6        The officer also claimed he reasonably suspected that Huez was violating a traffic law by riding his bicycle "on the

sidewalk area."  Section 5-2 states:  "It shall be unlawful to ride a bicycle on any public sidewalks, or upon a designated pedestrian path in any public park, unless signs are posted specifically permitting bicycling."  A separate section of the Code defines a "[s]idewalk" as "that portion of a street between the curbs, or lateral lines of a roadway, and the adjacent property lines, [that] is improved for the use of pedestrians."[1]  Tucson City Code § 20-1(27).

¶7        The phrase "improved for the use of pedestrians," is not specifically defined in the Code.  But the Code defines "[u]nimproved pedestrian area" as "that portion of a street between the curbs, or the lateral lines of a roadway, and the adjacent property lines, which is not improved with a sidewalk, is not landscaped, and is physically capable of continuous pedestrian use."  § 20-1(33).  Thus, a sidewalk must be an area that has been improved beyond being a simple path.

¶8        The area where the officer stopped Huez was not a sidewalk.  The officer specifically testified "[t]here [was] no actual sidewalk" in the area where Huez was riding his bicycle, although that area is "where a sidewalk would be if there was one there."  The officer described the area where he stopped Huez as "over the curb in the dirt area."  The exhibits show the area was a strip of dirt or gravel that ran parallel to the roadway between the curb and the property line that was not "improved" in any noticeable way. *See* § 20-1(27).  It was an "[u]nimproved pedestrian area," and not a sidewalk.  § 20-1(27), (33).  Therefore, the officer did not articulate any facts showing that Huez was riding his bike on the sidewalk as defined in the Code.

---

[1]Section 28-601(24), A.R.S., also defines "[s]idewalk" as "that portion of a street that is between the curb lines or the lateral lines of a roadway and the adjacent property lines and that is intended for the use of pedestrians."  Because the Arizona Revised Statutes do not prohibit the operation of bicycles on the sidewalk, we apply the definition from the Tucson Code in determining whether a violation occurred here.

**¶9**      Huez was not riding the wrong way on a roadway or riding on a sidewalk.[2]  Accordingly, the officer was unable to provide any reasonable, objective facts to support reasonable suspicion that Huez was committing a traffic violation at the time of the stop.

**¶10**      The state contends that the officer could have reasonably suspected that Huez had committed a traffic violation just prior to the stop, or that Huez was about to commit a traffic violation.  In particular, the state suggests that, because Huez was riding on the unpaved portion of sidewalk between two paved portions, it was reasonable for the officer to suspect Huez either

> had been riding on the mostly continuously paved sidewalk all along and would continue to do so as he proceeded eastward, or . . . [he] had been properly riding with eastbound traffic, but, upon seeing the construction, had cut across multiple lanes of traffic and proceeded on the wrong side of the road to avoid the hassle.

But the officer only witnessed Huez riding his bicycle on the dirt path, which, as we note above, constituted completely lawful behavior.

**¶11**      Moreover, the evidence shows Huez could have accessed the area where he was stopped from different, legal access points, including an adjacent parking lot, or could have walked his bike on the sidewalk area, or could have turned on a side street before reaching the other sidewalk area.  Thus, in order to have reasonable suspicion under this "alternative-scenario" theory, the officer would have had to infer an entire narrative of events based solely on Huez's presence on a dirt path.  This narrative would be little more than a "hunch," *State v. Evans*, 237 Ariz. 231, ¶ 8, 349 P.3d

---

[2] The state conceded at oral argument that Huez was not engaging in any illegal behavior at the time of the stop.

205, 208 (2015), *quoting Terry v. Ohio*, 392 U.S. 1, 27 (1968), that lacks "a particularized and objective basis," *id.*, *quoting United States v. Cortez*, 449 U.S. 411, 417 (1981), relying as it does on speculation about Huez's previous or future behavior. "If all the circumstances [surrounding a traffic stop] taken together . . . describe behavior that is entirely ordinary, then that behavior cannot reasonably give rise to particularized suspicion." *Id.* ¶ 12. In this case, the circumstances surrounding the traffic stop—operation of a bicycle in a legal manner with nothing more than speculation that Huez had previously broken a traffic law—describe entirely ordinary and common behavior.

¶12 At oral argument, the state correctly contended that, under *Terry v. Ohio*, 392 U.S. 1 (1968),[3] reasonable suspicion can be generated from observing completely legal behavior. In *Terry*, the United States Supreme Court stated that "a series of acts, each of them perhaps innocent," could, when "taken together" justify reasonable suspicion. 392 U.S. at 22. The facts of that case are instructive. The officer there observed two men standing on a street corner. *Id.* at 5. He "took up a post of observation" and observed the men walking and conferring in an unusual manner, in particular walking back and forth from a single store window. *Id.* at 5-6. The two men "repeated this ritual alternately between five and six times apiece—in all, roughly a dozen trips" over the course of ten to twelve minutes. *Id.* at 6. At this point, the officer had developed a suspicion that they were "casing a job" and made an investigatory stop. *Id.* at 6-7. The Court found that this set of observations

---

[3]The state also cited *State v. Box*, 205 Ariz. 492, ¶ 8, 73 P.3d 623, 626 (App. 2003), *abrogated on other grounds by Rodriguez v. United States*, ___ U.S. ___, ___, 135 S. Ct. 1609, 1615-16 (2015), for the proposition that a police officer need not personally observe a traffic violation. The court in *Box* construed two statutes, A.R.S. §§ 28-1594 and 13-3883, to suggest that officers are permitted "to stop a vehicle and detain the driver for an actual or suspected traffic violation not committed in that officer's presence but observed and reported by another officer." *Id.* ¶¶ 8-12, 73 P.3d at 626-27. That is not the case here and *Box* is inapposite to our analysis.

warranted reasonable suspicion that justified a brief stop and frisk for the purpose of "protect[ing] himself and others from possible danger." *Id.* at 28.

**¶13**       The facts of this case are distinguishable from *Terry*. The officer testified at the suppression hearing that he saw Huez riding his bicycle and then conducted a traffic stop. He did not engage in additional observation as the officer in *Terry* had and did not observe additional actions which were suggestive of illegal behavior. The officer briefly witnessed legal behavior that did not suggest the contemplation of criminal conduct, as was the case in *Terry*, and then proceeded to conduct an investigatory stop without more. The officer's observations in this case do not provide any basis to separate completely innocent behavior from suspicious behavior under the Fourth Amendment. *See State v. Teagle*, 217 Ariz. 17, ¶ 25, 170 P.3d 266, 273 (App. 2007) ("[C]ircumstances that 'describe a very large category of presumably innocent travelers' are insufficient to establish reasonable suspicion because travelers would then be subject to 'virtually random seizures.'"), *quoting Reid v. Georgia*, 448 U.S. 438, 441 (1980).

**¶14**       The state has not provided any reason why the legal behavior was suggestive of previous illegal behavior, other than the impermissible speculation that Huez might not have behaved in conformity with the law before the officer saw him. Therefore, the officer did not have a particularized suspicion that Huez had committed a traffic violation, but instead must have generally suspected Huez had been engaged in criminal activity. The stop was thus not based on reasonable suspicion.

## Reasonable Mistake (*Heien*) Analysis

**¶15**       Huez additionally argues the trial court erred in finding reasonable suspicion, to the extent it relied on *Heien v. North Carolina*, ___ U.S. ___, 135 S. Ct. 530 (2014). In denying the motion to suppress, the court found

> that because of the current state of the law the motion to suppress should be denied because the Court finds it was objectively

> reasonable to suspect that . . . Huez might have been violating the riding on the sidewalk statute and/or the [riding on the wrong side of the roadway statute].

The court appears to have relied on *Heien* for the proposition that reasonable suspicion can be founded on a mistake of law where that mistake "was an objectively reasonable one." *See Heien*, ___ U.S. at ___, 135 S. Ct. at 536. We review a ruling on a motion to suppress for an abuse of discretion, and "an error of law is an abuse of discretion." *State v. Stoll*, 239 Ariz. 292, ¶ 13, 370 P.3d 1130, 1134 (App. 2016).

**¶16** In *Heien*, the United States Supreme Court held that reasonable suspicion can be based on an objectively reasonable mistake of law. ___ U.S. at ___, 135 S. Ct. at 536. In determining whether the mistake of law is objectively reasonable, a court should not consider the "subjective understanding of the particular officer involved." *Id.* at 539. And a court will only find an objectively reasonable mistake of law where "the statute the officer interpreted mistakenly 'is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work.'" *Stoll*, 239 Ariz. 292, ¶ 15, 370 P.3d at 1134, *quoting Heien*, ___ U.S. at ___, 135 S. Ct. at 541 (Kagan, J., concurring). Reasonable suspicion can only be based on mistakes of law "when the law at issue is 'so doubtful in construction' that a reasonable judge could agree with the officer's view." *Heien*, ___ U.S. at ___, 135 S. Ct. at 541 (Kagan, J., concurring), *quoting The Friendship*, 9 F. Cas. 825, 826 (C.C.D. Mass. 1812).

**¶17** Here, the state appears to concede that the Code is unambiguous. In our review of the Code, as detailed above, we find no ambiguity in the definition of sidewalk contained therein. The Code specifically defines sidewalk as the area between the road and the adjacent property lines that is "improved for the use of pedestrians." § 20-1(27). The officer testified and the trial court found the location of the stop was not paved or improved. Thus, the officer made an unreasonable mistake of law by construing Huez's location as a sidewalk. *See Stoll*, 239 Ariz. 292, ¶ 15, 370 P.3d at 1134.

¶18    As to § 28-815, the state argues that, to the extent this court construes statutes to "allow bicyclists . . . to simply proceed on the wrong side of the road when confronted by construction zones," then that interpretation is "a reasonably debatable matter under [the] rules of statutory construction." But, as discussed above, Huez was not operating his bicycle on a roadway as defined by § 28-601(22). The state does not argue that the definition of roadway is ambiguous in any way. Thus, because Huez was not operating his bicycle on a roadway, and that definition is unambiguous, the officer made an unreasonable mistake of law in concluding that Huez was riding his bicycle the wrong way on a roadway; the presence of construction is inapposite to our analysis. Therefore, to the extent the trial court relied on *Heien* in denying the motion to suppress, it abused its discretion. *See Stoll*, 239 Ariz. 292, ¶ 13, 370 P.3d at 1134.

## *Brown/Strieff* Analysis

¶19    Finally, the state argues that, even if the stop was unlawful and was not based on a reasonable mistake of law, the discovery of narcotics was too far attenuated from the unlawfulness of the stop to justify exclusion. Huez responds, in part, by claiming the state waived this argument by not raising it below. But he cites two cases in which the state was the appellant. *State v. Brita*, 158 Ariz. 121, 122, 761 P.2d 1025, 1026 (1988); *State v. Carlson*, 228 Ariz. 343, ¶ 1, 266 P.3d 369, 370 (App. 2011). Here, the state was successful at trial and Huez is the appellant. "We are required to affirm a trial court's ruling if legally correct for any reason and, in doing so, we may address the state's arguments to uphold the court's ruling even if those arguments otherwise could be deemed waived by the state's failure to argue them below." *State v. Boteo-Flores*, 230 Ariz. 551, ¶ 7, 288 P.3d 111, 113 (App. 2012). Thus, we will review the state's attenuation claim.

¶20    "In [*Brown v. Illinois*, 422 U.S. 590, 603-04 (1975)] the [United States] Supreme Court applied three factors to determine whether the taint of illegal conduct is sufficiently attenuated from a subsequent search to avoid the exclusionary rule." *State v. Hummons*, 227 Ariz. 78, ¶ 9, 253 P.3d 275, 277 (2011). In this context, a court should consider: 1) the time elapsed between the unlawful police conduct and the "acquisition of the evidence," 2) "the

presence of intervening circumstances," and 3) "the purpose and flagrancy of the official misconduct." *Id.*

**¶21**       A search based on the discovery of an arrest warrant following an allegedly unlawful detention can be too far attenuated from the unlawful conduct to justify exclusion. *Id.* ¶¶ 10-15, 17. "[I]n determining whether the evidence was impermissibly tainted, we review for legal error," but "are deferential to the trial court's factual findings because that court has 'an opportunity to see the parties, lawyers and witnesses.'" *State v. Monge*, 173 Ariz. 279, 281, 842 P.2d 1292, 1294 (1992), *quoting State v. Chapple*, 135 Ariz. 281, 297 n.18, 660 P.2d 1208, 1224 n.18 (1983).

**¶22**       The first factor requires a court to examine the length of time between the unlawful conduct and the discovery of evidence; shorter times suggest the evidence should be suppressed. *Hummons*, 227 Ariz. 78, ¶ 10, 253 P.3d at 278. This is, however, the least important *Brown* factor because "'in essentially every case,' the time between an illegal stop and the discovery of evidence is short." *Id.*, *quoting McBath v. State*, 108 P.3d 241, 248 (Alaska Ct. App. 2005). In this case, the time between the unlawful detention and the discovery of the evidence appears to have been relatively short. The officer stopped Huez, conducted a warrant search, placed him under arrest, and a second officer at the scene effectuated a search of his belongings that produced the incriminating evidence. Although the officer did not provide exact times, the flow of events was uninterrupted and the discovery must have followed the unlawful detention fairly quickly. This factor weighs in favor of exclusion.

**¶23**       The second factor requires a court to consider whether any intervening circumstances occurred that would "provide[] a legal basis for the [search or] arrest notwithstanding an illegal seizure." *Id.* ¶ 11. "A law enforcement officer who previously lacked even reasonable suspicion, by discovering a valid warrant, gains probable cause not just to detain, but to arrest." *Id.* The existence of a valid warrant does not, however, "dissipate[] the taint of illegality," because to hold otherwise would allow police to "routinely illegally seiz[e] individuals, knowing that the subsequent discovery of a warrant would provide after-the-fact justification for illegal conduct." *Id.* ¶ 13. But once an officer discovers a warrant

during an investigation, that officer has an obligation to make an arrest, and the resulting arrest is thus "a ministerial act that [is] independently compelled by the pre-existing warrant." *Utah v. Strieff*, ___ U.S. ___, ___, 136 S. Ct. 2056, 2063 (2016).

**¶24** Here, the warrant for Huez's arrest obligated the officer to effectuate an arrest. Thus, although the initial detention was unlawful, the officer had probable cause for the arrest, and therefore "it was undisputedly lawful to search [Huez] as an incident of his arrest to protect [officer] safety." *Id.*; *see also Arizona v. Gant*, 556 U.S. 332, 339 (2009). This factor weighs against exclusion.

**¶25** Finally, we turn to the third *Brown* factor: the "purpose and flagrancy of illegal conduct." *Hummons*, 227 Ariz. 78, ¶ 14, 253 P.3d at 278. The "culpability of the law enforcement conduct," *id.*, *quoting Herring v. United States*, 555 U.S. 135, 143 (2009), is "'particularly' important in [an] attenuation analysis," *id.*, *quoting Brown*, 422 U.S. at 604. While reviewing this factor, "[c]ourts must consider the totality of circumstances in determining whether the evidence should be suppressed." *Id.* The court should consider, among other things, "an officer's regular practices and routines, an officer's reason for initiating the encounter, the clarity of the law forbidding the illegal conduct, and the objective appearance of consent." *Id.* Evidence should not be suppressed when police misconduct is "at most negligent," such as an officer conducting a "'negligibly burdensome precautio[n]' for officer safety." *Id.*, *quoting Rodriguez v. United States*, ___ U.S. ___, ___, 135 S. Ct. 1609, 1616 (2015). Thus, this analysis is more subjective than the *Heien* analysis.

**¶26** Here, based on the available record, the officer's conduct was not purposeful or flagrant. On cross-examination, the officer testified that he was patrolling as part of his assignment to a "Stone Garden Grant." He explained that this assignment required him to "conduct onsite investigations" in a "high crime area," which largely consisted of "find[ing] warrants and narcotics."

**¶27** No evidence was presented suggesting the officer in this case was engaged in a "systemic or recurrent" pattern of initiating unlawful traffic stops. *Strieff*, ___ U.S. at ___, 136 S. Ct. at 2063. Nor did his testimony show he "routinely approaches citizens

in the hopes of discovering warrants in order to search them incident to arrest." *Hummons*, 227 Ariz. 78, ¶ 15, 253 P.3d at 279. Indeed, in denying the motion to suppress, the trial court noted the officer's conduct was "objectively reasonable." We defer to this finding. *See Monge*, 173 Ariz. at 281, 842 P.2d at 1294. As in *Strieff,* the police conduct here was "at most negligent." *Strieff*, ___ U.S. at ___, 136 S. Ct. at 2063. Consequently, we find that the officer's conduct was not purposeful or flagrant. This factor conclusively weighs against exclusion. On this record, we find the discovery of the at-issue evidence was too attenuated from the unlawful stop to justify exclusion.

¶28 But, here, the state did not argue attenuation at the suppression hearing. As a result, the parties presented a limited amount of evidence as to the "officer's regular practices and routines" and the "officer's reason for initiating the encounter." *Hummons*, 227 Ariz. 78, ¶ 14, 253 P.3d at 279. And the trial court did not make any express factual findings or legal conclusions on the attenuation issue. *See Monge*, 173 Ariz. at 281, 842 P.2d at 1294 (we review for legal error but defer to factual findings).

¶29 Because the state did not argue attenuation, Huez was deprived of the opportunity to obtain such evidence. Therefore, the proper course of action is to remand to the trial court for a new evidentiary hearing at which the parties may introduce evidence concerning the *Brown/Strieff* factors. *See State v. Enriquez*, 106 Ariz. 304, 308, 475 P.2d 486, 490 (1970) (remanding where no hearing held on probable cause); *State v. Zamora*, 220 Ariz. 63, ¶¶ 8, 21, 202 P.3d 528, 532, 536 (App. 2009) (remanding where record insufficiently clear to decide suppression on appeal); *State v. Penney*, 229 Ariz. 32, ¶ 19, 270 P.3d 859, 863-64 (App. 2012) (remanding where trial court decided case on different issue); *cf. Boteo-Flores*, 230 Ariz. 551, ¶ 11, 288 P.3d at 114 (remand improper where appellate court may determine attenuation as a matter of law where not considered by trial court).

**Disposition**

¶30 For the foregoing reasons, we remand to the trial court for an additional evidentiary hearing on the motion to suppress,

limited to the state's attenuation argument.  If the court determines that the evidence was admissible, Huez's conviction and sentence are affirmed, subject to any appeal from that decision.  But if the court determines the evidence was inadmissible, it shall suppress the evidence and vacate Huez's conviction and sentence, subject to any appeal from that decision.