NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

GERERD KENNETH BOTCH, *Appellant.*

No. 1 CA-CR 19-0383
FILED 10-1-2020

Appeal from the Superior Court in Maricopa County
No. CR2017-118642-001
The Honorable Jacki Ireland, Judge *Pro Tempore*
The Honorable George Foster, Jr., Judge, *Retired*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Gracynthia Claw
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Peg Green
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge D. Steven Williams delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge David D. Weinzweig joined.

**W I L L I A M S**, Judge:

¶1        Gererd Kenneth Botch appeals his conviction for possession or use of dangerous drugs. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2        In April 2017, Officer Baynes was on patrol in the west side of Phoenix. Around 1 a.m. he noticed a roadway, ending in a cul-de-sac, blocked by three or four shopping carts, a bicycle with a cart attached to it, and a fifty-five-gallon drum. Baynes also observed a "transient camp" on the side of the roadway. Botch and Randell Havier were in the middle of the road, and Baynes approached both men. Baynes first questioned Havier, who was later arrested for marijuana possession. Baynes asked Botch whether he possessed any drugs or drug paraphernalia. Botch said he did not, but he could not vouch for what was inside a nearby backpack.

¶3        Baynes asked to search Botch's pockets. The parties disagree whether consent was given. Regardless, a search occurred and Baynes found cash, a bag of methamphetamine and a tightly-rolled dollar bill in Botch's pockets. Baynes activated his recording device, *Mirandized* Botch, and interviewed him.[1] About sixteen minutes into the recorded interview, Botch said he never consented to be searched.

¶4        Botch was arrested, charged, and convicted of possession or use of dangerous drugs, a Class 4 felony. Botch filed a pretrial motion to suppress evidence of drugs, drug paraphernalia, and statements he made to Baynes, claiming the encounter was illegal and that he did not consent to Baynes searching him. At the suppression hearing, Baynes testified that Botch consented to the search, but Havier testified that Botch "told [Baynes] not to" search his pockets.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

**¶5**        The court denied Botch's motion to suppress. Because of a factual error in the court's order, the State requested and obtained an order *nunc pro tunc* correcting the error; the court also *sua sponte* clarified its previous ruling and expressly found Botch consented to the search.

**¶6**        Following his conviction, Botch was sentenced to a mitigated term of six years in prison. Botch timely appealed challenging the denial of his motion to suppress, alleging prosecutorial misconduct, and claiming Baynes' trial testimony was improper. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-2101(A)(1), 13-4031 and 13-4033(A)(1).

**DISCUSSION**

*I.      Motion to Suppress*

**¶7**        When reviewing the denial of a motion to suppress, we "defer to the [superior] court's factual findings absent an abuse of discretion," but "review *de novo* [] the [superior] court's ultimate legal determination that the search complied with the dictates of the Fourth Amendment." *State v. Valle*, 196 Ariz. 324, 326, ¶ 6 (App. 2000). We "restrict our review to consideration of the facts the [] court heard at the suppression hearing," *State v. Blackmore*, 186 Ariz. 630, 631 (1996), and will affirm [the] court's ruling if it was legally correct for any reason, *State v. Huez*, 240 Ariz. 406, 412, ¶ 19 (App. 2016) (citation omitted).

*A.      Reasonable Suspicion*

**¶8**        Botch argues Baynes lacked reasonable suspicion for an investigatory stop. "[T]he Fourth Amendment is satisfied," for purposes of an investigatory stop, "if the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" *United States v. Arvizu*, 534 U.S. 266 (2002) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). "In making reasonable-suspicion determinations, reviewing courts must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Id.*; *see also State v. Primous*, 242 Ariz. 221, 223, ¶ 11 (2017). Evidence obtained as a result of an illegal investigatory stop is barred from trial under the exclusionary rule. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963); *see also State v. Richcreek*, 187 Ariz. 501, 506 (1997).

**¶9**        Here, Baynes conducted an investigatory stop of Botch in the roadway and Botch was not free to leave. Baynes maintains he decided to investigate Botch after observing "[s]everal potential [criminal] violations,"

which could have included obstructing a roadway, unlawful possession of a shopping cart, trespassing, and unlawful urban camping, all misdemeanors under either Arizona Revised Statutes or the local municipal code. The observed possible violations gave Baynes a particularized and objective basis for detaining and investigating Botch.

¶10        Botch argues that because Baynes did not question or arrest him for any of the potential violations, Baynes must have initiated the stop with the intention to search Botch for drugs. However, an officer's subjective intentions are not relevant to determining whether reasonable suspicion existed for the stop. *See Whren v. United States*, 517 U.S. 806 (1996); *see also State v. Livingston*, 206 Ariz. 145, 148, ¶ 13 (App. 2003). Because the evidence showed Baynes had a reasonable suspicion that criminal activity was afoot, the superior court did not err in concluding the investigatory stop was legal.

### B.        Consent

¶11        Botch contends "the record does not support the [superior] court's finding of consent," and refers to the court's initial order denying his motion to suppress as "confusing." Noting the court's statement that it was "challenged to find the testimony of each side to be credible as to what actually happened," the State seemingly concedes the issue and suggests we remand for further findings:

> The record is unclear, but the [superior] court's ruling could reasonably be read to suggest that the court found [] Baynes to be the more credible witness. On the other hand, given the [] court did not simply find consent as the basis for denying Botch's suppression motion, it is equally reasonable that the court found Havier to be the more credible witness . . . In light of the[se] ambiguities . . . [t]he State asks the Court [of Appeals] remand this matter so the [superior] court may make the necessary consent finding and credibility determination.

¶12        Botch counters in his reply brief that the superior court's *nunc pro tunc* order "makes it very clear the court found that Botch consented to [Baynes'] request to search his pockets," and that "the [superior] court's order provides this [c]ourt with enough information" to review the appeal without remanding. We agree with Botch's position in his reply brief that the record is sufficient for our review on appeal.

¶13 The superior court's initial order hinted at, but ultimately stopped short of, expressly finding consent. The subsequent *nunc pro tunc* order, however, addressed it directly:

> IT IS FURTHER ORDERED correcting the Court's January 8, 2019 Minute Entry to reflect that the Defendant gave consent to a search of his pockets where illegal drugs were found.

The court on its own may correct omissions or oversights in the record *nunc pro tunc*. *See* Ariz. R. Crim. P. 24.4. "The purpose of a *nunc pro tunc* order is to make the record reflect the intention of [] the court at the time the record was made." *State v. Johnson*, 113 Ariz. 506, 509 (1976) (emphasis added). The court was within its discretion to *sua sponte* correct its previous ruling to accurately reflect its intention.

¶14 Although a warrant is generally required for a search to be valid under the Fourth Amendment, the requirement is excused if the search is conducted with valid consent. *State v. Valenzuela*, 239 Ariz. 299, 302, ¶¶ 10-11 (2016). Whether consent is voluntary is a factual issue resolved by reviewing the totality of circumstances. *Id.* at 302, ¶ 11.

¶15 Here, the superior court made a credibility determination between the opposing testimony of Baynes, who testified Botch consented to the search, and Havier, who testified Botch did not. And, while the court noted the difficulty it had in deciding which testimony to believe, in the end the court concluded Baynes was the more credible of the two. Because we defer to the superior court's credibility determinations, *State v. Mendoza-Ruiz*, 225 Ariz. 473, 475, ¶6 (App. 2010), and because the record supports the court's conclusion that Botch consented to the search of his pockets, the court did not err in its ruling.[2]

*II.    Prosecutorial Misconduct*

¶16 Botch also argues prosecutorial misconduct occurred during closing argument. We review "each instance of alleged misconduct, and the standard of review depends upon whether [the defendant] objected." *State v. Morris*, 215 Ariz. 324, 335, ¶47 (2007). Where the defendant objected at trial, we review for harmless error; if he did not, we review for fundamental error. *State v. Gallardo*, 225 Ariz. 560, 568, ¶35 (2010). We will reverse a conviction when "(1) the prosecutor committed misconduct and (2) a reasonable likelihood exists that the prosecutor's misconduct could have

---

[2] Because the court did not err in finding consent to the search, we need not address Botch's inevitable discovery argument.

affected the verdict." *State v. Escalante-Orozco*, 241 Ariz. 254, 280, ¶ 91 (2017) (quoting *State v. Benson*, 232 Ariz. 452, 463, ¶ 40 (2013)), *abrogated on other grounds by State v. Escalante*, 245 Ariz. 135 (2018). Where multiple claims of misconduct occurred, we consider their "cumulative effect." *State v. Martinez*, 230 Ariz. 208, 217, ¶ 42 (2012).

¶17         Botch objected during the prosecutor's rebuttal closing argument when the prosecutor argued:

> The Defense attorney brought up the concept that a reasonable person would not consent to a search of their pockets if they knew they had methamphetamine in it. Believe it or not, this happens every day throughout the –- the courts. People consent to searches even when they have something they are not supposed to have. Who knows what reason. Maybe it's because they think that they are going to bluff their way out.
>
> . . .
>
> I want to talk a little bit about the –- the allegation the Defense put on the State here that we should have done more, the officer should have done more by testing the dollar bill or testing the baggies for fingerprints or DNA evidence. You heard from both the officer and the criminalist . . . that her lab is very backed up. And you heard from the officer say that those type of actions, the DNA testing, the fingerprint testing are reserved for cases of more severity. This case is important to Mr. Botch, and this case is important to me because I am here representing the State in this matter. I am also here representing the Constitution. I believe this case to be just as important as other cases because it does involve Mr. Botch's . . . livelihood . . . and life . . . it involves important things to him.

¶18         Portions of both statements were improper. As to the first, it was improper for the prosecutor to offer up that people consent "everyday" to searches when the record did not reflect the same, and also improper to speculate that "[m]aybe [people] consent because they think that they are going to bluff their way out of it." Similarly, the prosecutor's statement that she was "here representing the Constitution," could have given the jury the impression that the prosecutor alone, unlike defense counsel, sought to

protect the supreme law of the land, and thus was, at least arguably, inappropriate.

¶19　　　Because Botch objected to these statements at trial, we review for harmless error; the State has the burden to prove beyond a reasonable doubt that the error did not affect the verdict. *Escalante*, 245 Ariz. at 144, ¶ 30; *see also State v. Murray*, 247 Ariz. 447, 453, ¶ 14 (App. 2019). As noted by the State, the superior court instructed the jury that the lawyer's comments were not evidence. And, given the brevity, nature, and context of the comments, which were made in response to statements made in Botch's closing argument, the errors were harmless. *See State v. Payne*, 233 Ariz. 484, 512, ¶ 113 (2013) (concluding the jury instruction "that the lawyers' arguments were not evidence" was "sufficient to dispel any taint" of a vouching error).

¶20　　　Botch did not object at trial to the two remaining statements he challenges on appeal; consequently, we review for fundamental error:

> [W]hat I am saying is, it's not up to us to determine how the police officers and how the crime lab utilizes their resources . . . [b]ut you have enough here in front of you to find [Botch] guilty.

. . .

> You heard the audio yourself how rapid the Defendant's speech was, how erratic his speech was. And you heard Officer Baynes explain that some of those speech patterns do indicate use of a substance, an unknown substance at that point.

Then, after defense counsel countered, "the State got up here and said [] Baynes testified that he believed [] Botch was high," the prosecutor offered in rebuttal:

> [Y]ou heard from Officer Baynes that some of his observations indicated that [Botch] may have been on some sort of substance. Whether or not there was methamphetamine, we don't know. But he may have been on some sort of substance that altered his perception, altered his ability to be a reasonable person . . . And in this case, [] Botch was not acting as a reasonable person. He was not –- of even mind, sober mind.

**¶21** Botch claims these statements from the prosecutor constituted error. We disagree. But even if they had, Botch has failed to demonstrate that either statement "went to the foundation of the case . . . took from the defendant a right essential to his defense, or . . . was so egregious that he could not possibly have received a fair trial." *Escalante*, 245 Ariz. at 142, ¶ 21. Further, the record does not support Botch's contention that the cumulative errors were fundamental, resulting in prejudice, a burden of persuasion which Botch carries. *See State v. Vargas*, __ Ariz. __, __, ¶ 15, 468 P.3d 739, 743 (2020). Botch's claims of prosecutorial misconduct fail.

*III.   Witness Testimony*

**¶22** Arizona Rule of Evidence 701 limits opinion testimony a lay witness can offer. On appeal, Botch alleges four instances of Rule 701 errors in Baynes' testimony, which he summarizes as follows: (1) an opinion that Botch's defense was a "farce," (2) a suggestion that Botch was guilty of other crimes but, because of Baynes' generosity, was not charged with additional crimes, (3) a reference that Botch was booked into jail, and (4) a suggestion that Botch also could have submitted the baggie of drugs found in his pocket for testing. Botch did not object at trial to the first two instances, which we review for fundamental error, *See Escalante*, 245 Ariz. at 140, ¶ 12, but did object to the third and fourth instances, which we review for harmless error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶18 (2005).

**¶23** Assuming, *arguendo*, Baynes' testimony in the first two instances were error, Botch offers nothing to establish the errors went to the foundation of the case, took from Botch an essential right, or demonstrated he did not receive a fair trial. *See Escalante*, 245 Ariz. at 142, ¶ 21. As to instances three and four, the court either directed the prosecutor to "refocus" Baynes or sustained the objection Botch made at trial. Any error was harmless and appropriately resolved by the superior court. Botch's argument fails.

**CONCLUSION**

**¶24** For the foregoing reasons, we affirm.

