METCALF, Judge,
dissenting:
¶ 33 Because I believe that the trial court properly denied the motion to suppress on the ground that the good-faith exception to the exclusionary rule applies, I respectfully dissent.
¶34 To summarize, the facts included in the affidavit showing that Dean had allegedly sexually molested a child are sufficient to show that the detective acted in objective good faith in obtaining a warrant to seize Dean’s computer, particularly when coupled with facts that the detective had discovered but failed to include in his affidavit. Those additional facts are that Dean had been previously convicted of child molestation and had photographed his nude child victim. There is also a common-sense relationship between child molestation and child pornography. To the extent that the detective made mistakes in articulating probable cause to seize Dean’s computer, they were neither systemic nor deliberate. Without evidence of systemic or deliberate police misconduct, the good-faith exception applies.
¶ 35 To explain my position, a more expansive recitation of the facts and procedural history of the case is required. On July 16, 2012, V.D. reported to a detective with the Cochise County Sheriffs Office that Dean had sexually molested her eight-year-old son, C.D., approximately eighteen months earlier. The detective interviewed V.D. and S.D., C.D.’s father, three days later. V.D. explained that in December 2010, C.D. had been living in a trailer with S.D. on property owned by Dean’s parents. V.D. also explained that Dean had lived in a trailer on the same property and that S.D. had worked for Dean. S.D. told the detective he knew Dean to be a registered sex offender. Dean’s alleged molestation of C.D. occurred in the attic of a duplex located on the same property.
¶ 36 The detective then interviewed a caseworker for the Arizona Child Protective Service[10] who had received a report a month earlier about C.D. from a local hospital. The hospital had reported that V.D. recently refused recommended in-patient care because she was concerned there would be no one to care for C.D. V.D. had told hospital workers that Dean was a pedophile. The detective interviewed a hospital employee who confirmed the account.
¶ 37 On July 24, 2012, the detective watched, by closed-circuit video monitoring, a child forensic interview of C.D. The child explained he had been at his aunt’s duplex located on the same property watching cartoons. Dean was working in the attic of the duplex. C.D.’s aunt and father had left to buy cigarettes. Dean was making noise upstairs in the attic and C.D. asked him to stop. Dean asked C.D. to come upstairs, which he did. Dean then pulled down C.D.’s pants and underwear and molested him. Dean told C.D. not to say anything. C.D. said he had been afraid to tell anyone because he feared Dean would go back to prison. The detective did not believe that the forensic interviewer asked C.D. whether Dean photographed him or showed him pornography.
¶ 38 Two days later, on Saturday, July 26, 2012, the detective received a report from an Arizona parole board officer that had been prepared by the Missouri State Board of Probation. The Missouri probation report reflected that Dean had been convicted of several statutory rape and sodomy charges in 1998 in Missouri and had been sentenced to eighteen years in prison. The report said the charges stemmed from Dean molesting his nine-year-old stepdaughter and her nine-year-old friend in 1996. Dean’s stepdaughter *396 told authorities that Dean had been molesting her since she was seven years old. The stepdaughter also told authorities that Dean took nude pictures of her and pictures of them while they were engaged in sexual activity.
¶ 39 On Tuesday, July 30, 2012, just two business days after receiving the documents from Missouri, the detective prepared an affidavit and search warrant and presented it to a Cochise County justice of the peace. Although the justice of the peace placed the detective under oath, the detective did not make any statements about the facts of the investigation that were not contained in his affidavit.
¶ 40 In his affidavit, the detective failed to include the facts he learned from the Missouri State Board of Probation, including that Dean had been convicted of child molestation in Missouri and had taken nude photographs of his child victim. The detective also failed to include that his training and experience taught him to look for computers in child sex cases, a fact he testified to during the suppression hearing.
¶ 41 The warrant authorized the detective to search Dean’s automobile and a fifth-wheel trailer for, among other things, “[a]ny and all electronic devices and associated materials capable of producing, manipulating, sending, receiving, and/or storing electronic files, media and/or digital images which may be stored in (i.e. computers, cameras, cell phones, thumb drives, etc.),” The warrant also authorized the search for “[a]ny and all items which visually depict minors engaged in exploitative exhibition or any and all other sexual conduct such as, but not limited to, posing nude.” The search of Dean’s trailer resulted in the seizure of a laptop computer, a digital camera, three flip-style cellular telephones, and a notebook that referenced children in a sexual way.
¶ 42 In November 2012, after continuing to investigate the matter, the detective obtained a second search warrant from the same justice of the peace to search the contents of the electronic devices he had seized from Dean’s trailer on July 30, 2012. The detective’s affidavit for the second search warrant identified additional facts to support the search of Dean’s computer and other electronic equipment. Among those other facts were that the detective had received documents from Missouri, which he included with his affidavit, indicating Dean had been convicted of statutory rape and sodomy charges in 1998 and he had taken nude photographs of his child victim; Dean had been caught viewing child pornography on another person’s computer; Dean had a VHS cassette tape of a movie about child sexual abuse that contained an image of a nude pre-adolescent female; and he had admitted to the detective that C.D. came up to the attic when he was there and that he thought no one else was at home at the time (although he denied any molestation had occurred).[11]
¶ 43 After obtaining the November warrant, the sheriffs department undertook a forensic examination of the computer and found images of child pornography on it.[12] The examination showed that Dean’s computer contained over 4,000 digital images, “the majority” of which “depiet[ed] minor females ... and/or minor males engaged in sexual conduct!,] exploitive exhibition or sexually suggestive poses/clothing.” Nearly 600 additional digital images depicted unknown minor females in such circumstances and fifty-two others depicted known exploited victims according to a national database on exploited children. The examination did not reveal any images of O.D. on Dean’s computer.
¶44 The state charged Dean with ten counts of sexual exploitation of a minor by possessing visual depictions in which the minor is under fifteen years of age and engaged in exploitive exhibition or other sexual conduct. The state proceeded on one count at *397 trial. Dean was convicted and sentenced to a twenty-one-year term of imprisonment.
¶45 The first issue on which I disagree with the majority opinion is in determining what search we are being asked to review. I agree that in reviewing whether the good-faith exception applies, we are limited to reviewing the evidence admitted at the suppression hearing. Brown v. McClennen, 239 Ariz. 521, ¶ 4, 373 P.3d 538, 540 (2016). But this should not prevent us from examining the entire trial court record to determine whether the parties have accurately stated the record to us, including what legal issues were and were not raised before the trial court.
¶ 46 In his motion to suppress, Dean only addressed the seizure of his computer pursuant to the July 30, 2012 warrant. He did not raise any issue with respect to the forensic search of the computer, Likewise, the state explained in its response to Dean’s motion that it had seized the computer pursuant to the July 30 warrant, but that a second warrant had been obtained to search its contents. At the suppression hearing, the detective testified that the July 30 warrant had not been amended, corrected, or modified. The detective did not discuss the November warrant during the hearing, most likely because everyone understood that the only issue Dean raised before the trial court was the seizure of Dean’s computer pursuant to the July 30 warrant.
¶ 47 On appeal, Dean conflates the seizure of his computer with the later forensic search of the computer that uncovered the existence of child pornography. This is of concern because the majority bases much of its analysis on the latter search even though Dean did not raise an issue regarding the second warrant which led to that search.
¶ 48 Because the pornographic images were obtained pursuant to a search warrant, Dean had the burden of going forward in his motion to suppress. See Ariz. R. Crim. P. 16.2(b) (“the prosecutor’s burden of proof shall arise only after the defendant has come forward with evidence of specific circumstances which establish a prima facie case that the evidence taken should be suppressed”); State v. Hyde, 186 Ariz. 252, 270, 921 P.2d 655, 673 (1996) (“[I]f the challenged evidence was obtained under authority of a warrant, defendant bears the burden of going forward with some evidence to show that the challenged evidence was illegally obtained.”). If Dean wanted to address issues beyond the July 30 warrant, it was his initial burden to raise them in his motion to suppress. By not raising the issue, he forfeited it. State v. Henderson, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005) (failure to object at trial forfeits right to appellate review except for prejudicial fundamental error).
¶ 49 Dean could not limit his suppression motion to the first warrant, raise issues on appeal that can only be resolved by reviewing the second warrant, but then claim we cannot even acknowledge the existence of the second warrant because he did not raise it at the suppression hearing, Accordingly, the issue, properly framed, is whether the good-faith exception to the exclusionary rule applies to the seizure of Dean’s computer pursuant to the July 30 warrant.
¶ 60 The majority correctly acknowledges that the good-faith exception provides that evidence seized by law enforcement officers acting in good faith, but pursuant to a faulty warrant, should not be suppressed. United States v. Leon, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), And it is further acknowledged the Supreme Court set out four exceptions to that general rule:
(1) when a magistrate is misled by information that the affiant knew was false or would have known was false but for his or her reckless disregard for the truth; (2) when the issuing magistrate “wholly abandon[sj” his or her judicial role; (3) when a warrant is based on an affidavit “so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable”; and (4) when a warrant is “so facially deficient ... that the executing officers cannot reasonably presume it to be valid.”
Hyde, 186 Ariz. at 273, 921 P.2d at 676, quoting Leon, 468 U.S. at 923, 104 S.Ct. 3405 (alterations in Hyde).
¶ 51 But I part company with the majority as to what we can consider in analyzing *398 whether a law enforcement officer acted in good faith in executing a warrant that lacked probable cause. Many courts have considered evidence that the officer knew but failed to include in the affidavit. For example, the Eighth Circuit has stated “when assessing the officer’s good faith reliance on a search warrant under the Leon good faith exception, we can look outside of the four corners of the affidavit and consider the totality of the circumstances, including what the officer knew but did not include in the affidavit.” United States v. Farlee, 757 F.3d 810, 819 (8th Cir. 2014); see also United States v. McKenzie-Gude, 671 F.3d 452, 460 (4th Cir. 2011) (“Leon presents no barrier to holding that the experienced officers in this case, who swore out the affidavit and executed the search, acted with the requisite objective reasonableness when relying on uncontroverted facts known to them but inadvertently not presented to the magistrate.”); United States v. Martin, 297 F.3d 1308, 1318 (11th Cir. 2002) (“[W]e can look beyond the four corners of the affidavit and search warrant to determine whether [the officer] reasonably relied upon the warrant.”). This approach advances the purpose of the good-faith exception: to “limit the application of the exclusionary rule to those instances when it will most effectively serve to deter police misconduct.” State v. Edmonson, 257 Neb. 468, 598 N.W.2d 450, 460-61 (1999) (“[Because] this purpose is best served by viewing all of the circumstances surrounding the issuance and execution of the warrant, we conclude that in assessing the good faith of an officer’s conducting a search pursuant to a warrant, an appellate court must look to the totality of the circumstances surrounding the issuance of the warrant, including information not contained within the four corners of the affidavit.”); see also Adams v. Commonwealth, 275 Va. 260, 657 S.E.2d 87, 94 (2008) (“The purpose of the good-faith exception is, therefore, best accomplished by looking at the totality of the circumstances surrounding the issuance and execution of the search warrant, [which] does, at a minimum, take into account information known to police officers that was not included in the search warrant affidavit.”) (citation omitted). Thus, going beyond the four corners of the affidavit in determining whether the officer acted in good faith is consistent with Leon's admonition that in determining whether good faith applies, the court should consider all the circumstances. See Leon, 468 U.S. at 922 n.23, 104 S.Ct. 3405.[13]
¶ 52 There is no evidence to suggest, and no party has argued, that either of the first two exceptions under Leon apply. Nothing indicates the magistrate was misled by information that the averring detective knew was false or would have known was false but for his reckless disregard for the truth. Nor did the issuing magistrate wholly abandon his judicial role.
¶ 53 The third exception under Leon applies when a warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. While the majority opinion states that it is only reviewing the fourth Leon exception, it addresses this third exception by finding that the detective’s affidavit completely lacked probable cause by failing to link Dean’s alleged molestation to whether he possessed child pornography on his computer.
¶ 54 But it is undisputed that the detective’s affidavit establishes probable cause to show that Dean molested C.D., a minor child. The affidavit, standing alone, may not establish probable cause that Dean possessed child pornography on his computer. However, considering that Dean had been convicted of sexual molestation in Missouri, had taken nude photographs of his child victim in that Missouri case, and then had molested C.D. after being released from prison in Missouri, coupled with the common-sense relationship between child molestation and child pornography, the officer arguably had an objective good-faith belief that probable cause existed *399 to seize Dean’s computer. After all, probable cause means that facts and circumstances “would warrant a man of reasonable caution in the belief that the items to be seized were in the stated place.” State v. Summerlin, 138 Ariz. 426, 431, 676 P.2d 686, 691 (1983), quoting United States v. Lucarz, 430 F.2d 1051, 1055 (9th Cir. 1970); see also Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (Probable cause means “a reasonable ground for belief of guilt,” which is “ ‘less than evidence which would justify condemnation’ or conviction” but “more than bare suspicion.”), quoting Carroll v. United States, 267 U.S. 132, 161, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Locke v. United States, 11 U.S. (7 Cranch) 339, 348, 3 L.Ed. 364 (1813), see also Maryland v. Pringle, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (“The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances.” But “‘[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt,’ ” and “the belief of guilt must be particularized with respect to the person to be searched or seized.”), quoting Brinegar, 338 U.S. at 175, 69 S.Ct. 1302 (alteration in Pringle). The detective had developed reasonable grounds to believe that Dean’s computer may have held evidence of a crime even if he failed to include all the facts in his affidavit.
¶ 55 Such a holding is consistent with a Second Circuit ease in which the court concluded that an eighteen-year-old conviction for child molestation was not sufficient to establish probable cause to believe the defendant possessed child pornography, but was sufficient to prove that the officer acted in good faith when he obtained a warrant on that basis. United States v. Falso, 544 F.3d 110, 128 (2d Cir. 2008). Interestingly, the concurring judge found a sufficiently strong link between child molestation and child pornography to support a finding of probable cause. Id. at 129-32 (J. Livingston, concurring). In coming to that decision, the concurring judge cited a congressional finding in the Child Pornography Prevention Act of 1996, relied on in a previous decision, that there is “a strong correlation between child pornography offenders and molesters of children” and that the “correlation between collection of child pornography and actual child abuse is too real and too grave to ignore.” Id. quoting United States v. Brand, 467 F.3d 179, 198 n.17 (2d Cir. 2006).
¶ 56 Likewise, the Eighth Circuit has concluded “[tjhere is an intuitive relationship between acts such as child molestation or enticement and possession of child pornography. Child pornography is in many cases simply an electronic record of child molestation.” United States v. Colbert, 605 F.3d 573, 578 (8th Cir. 2010); see also Probable Cause to Protect Children: The Connection Between Child Molestation and Child Pornography, 36 B.C.J.L. & Soc. Just. 287, 310-11 (2016) (sufficient empirical evidence supports conclusion that relationship exists between child molestation and child pornography so that evidence of child molestation should establish probable cause to search for child pornography).
¶ 57 Ultimately, the majority decision does not base its decision solely on the lack of probable cause, but also on the fourth exception to the good-faith exception: namely, that the July 30 warrant was so facially deficient that the detective could not reasonably presume it to be valid. In coming to that conclusion, the majority opinion primarily relies on United States v. Spilotro, 800 F.2d 959 (9th Cir. 1986).
¶ 58 Spilotro does not squarely address the good-faith exception. Indeed, in Spilotro, the trial court granted the defendant’s motion to suppress before the Supreme Court’s ruling in Leon and then, in the “interests of finality,” decided not to revisit the issue after Leon was decided. Id. at 962. The central issue in Spilotro was not good faith but rather whether the warrants “describe[d] the items to be seized with sufficient particularity to be valid under the Fourth Amendment.” Id. at 963. The court concluded that “the warrants ... d[id] not describe the items to be seized with sufficient particularity, and we cannot conscientiously distinguish this case from others in which we have held warrants invalid because of their general terms.” Id. at 964. Having found that the *400 warrant was not sufficiently particular, the Ninth Circuit only cursorily addressed the good-faith exception. The law of the good-faith exception has developed significantly since Spilotro was decided thirty years ago. It is not the authority upon which to establish a rule for Arizona.
¶ 59 More modern cases have addressed the issue of when a warrant to search a computer is so facially deficient that officers could not rely on it in good faith. For example, the Tenth Circuit has held “[n]ot every deficient warrant ... will be so deficient that an officer would lack an objectively reasonable basis for relying upon it. ‘Even if the court finds the warrant to be facially invalid ... it “must also review the text of the warrant and the circumstances of the search to ascertain whether the agents might have reasonably presumed it to be valid.” ’ ” United States v. Otero, 563 F.3d 1127, 1134 (10th Cir. 2009), quoting United States v. Riccardi, 405 F.3d 852, 863 (10th Cir. 2005) (alteration in Riccardi).
¶ 60 The facts supporting a finding that the detective acted in objective good faith even if the warrant was facially invalid are as follows. First, the detective had probable cause to believe that Dean possessed child pornography based on the Missouri evidence when combined with the current evidence of child molestation. Second, the detective who obtained the warrant executed it. Thus, he confined his search to evidence that was related to the child molestation investigation. There is no indication that he seized any items that did not relate to the child molestation investigation. This is important because as the court found in Riccardi, limiting a search to evidence relevant to the matter under investigation is a factor that weighs in favor of finding good faith. 405 F.3d at 861.
¶ 61 Third, the warrant, when read as a whole, clearly indicates that the detective was searching for evidence of child pornography on Dean’s computer. See United States v. Conley, 4 F.3d 1200, 1208 (3d Cir. 1993) (search warrant should be read as a whole, in context, and not in isolation). The first paragraph describing the things to be seized identified electronic devices capable of storing digital images or files. The second paragraph identified items that depict minors engaged in exploitative exhibition, sexual contact, or nude. Had the detective combined these two paragraphs into one, there would have been no doubt that the warrant was sufficiently particular to justify searching Dean’s computer for child pornography. The fact that the detective wrote them in two separate paragraphs should not determine the outcome.
¶ 62 Fourth, the detective did not search the contents of the computer based on the July 30 warrant. This shows he did not use the warrant as an excuse to examine private data unrelated to the child molestation investigation. Fifth, there is no evidence the detective made any false or misleading statements in his affidavit. He was inexperienced, and drafted an affidavit that in retrospect was inadequate to the task at hand. The good-faith exception should apply in such a circumstance. See generally United States v. Zimmerman, 277 F.3d 426, 436 (3d Cir. 2002) (“[Sjuppression should not be ordered where an officer, acting in objective good faith, has obtained a warrant without probable cause because in such cases only marginal deterrent purposes will be served which ‘cannot justify the substantial costs of exclusion.’ ”), quoting Leon, 468 U.S. at 922, 104 S.Ct. 3405.
¶ 63 And finally, as the Supreme Court held in Herring v. United States, “[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.” 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). Exclusion is not a necessary consequence of a Fourth Amendment violation. Id. at 141,129 S.Ct. 695. There must be “deliberate, reckless, or grossly negligent conduct or in some circumstances recurring or systemic negligence.” Id. at 144, 129 S.Ct. 695; see also Davis v. United States, 564 U.S. 229, 238, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011) (affirming Herring’s holding that police mistakes must be more than isolated negligence to justify exclusion); State v. Valenzuela, 239 Ariz. 299, ¶ 35, 371 P.3d 627, 638 (2016) (citing Herring and Davis for the proposition that police *401 conduct must be sufficiently deliberate to justify exclusion). There is no evidence of deliberate, reckless, or grossly negligent police misconduct in this case, a fact that the majority concedes. Nor is there evidence of recurring or systemic negligence. Thus, this case is unlike State v. Stoll, 239 Ariz. 292, 370 P.3d 1130 (App. 2016), in which the court found lack of good faith due to systemic mistakes in training officers on the proper application of the motor vehicle laws. Contrary to Herring, Davis, and Valenzuela, the majority opinion does not weigh the relatively small mistakes the detective made in drafting the affidavit and warrant against the high cost of “letting [a] guilty and possibly dangerous defendant[] go free—something that ‘offends basic concepts of the criminal justice system.’” Herring, 555 U.S. at 141, 129 S.Ct. 695, quoting Leon, 468 U.S. at 908, 104 S.Ct. 3405.
¶ 64 The majority opinion applies Leon’s fourth exception to the good-faith exception too broadly and without regard to the substantial costs to society of allowing a dangerous defendant to escape punishment. If adopted, this would result in the suppression of evidence in any case in which the warrant was not sufficiently particular. But the Supreme Court held in Leon that the exclusionary rule should only apply in “unusual cases.” 468 U.S. at 918, 104 S.Ct. 3405. This is not that unusual case.
¶ 65 Accordingly, I respectfully dissent.

. Now the Department of Child Safety. See 2014 Ariz. Sess. Laws 2d Spec. Sess., ch. 1, §§ 6, 20, 54.

. The facts stated in paragraphs 43 and 44 of the dissent are taken from evidence admitted at trial, but not offered or admitted during the suppression hearing. As discussed below, they are included to properly frame the issue on appeal.

. The majority criticizes my inclusion of a description of the child pornography found on Dean's computer. However, this is the evidence Dean's motion sought to suppress. It seems incongruous that we cannot discuss the evidence that is the subject of this appeal.

. The court overruled Dean’s objection to the detective’s testimony about the Missouri evidence at the suppression hearing. On appeal, Dean again argues that the court could not go beyond the four corners of the affidavit in determining whether the good-faith exception applies. Accordingly, this court should decide whether we can consider the Missouri evidence in determining if the detective acted in good faith.