240 P.3d 1235

**STATE of Arizona, Appellant,**

v.

**Gustavo MENDOZA–RUIZ, Appellee.**

**No. 1 CA–CR 009–0560.**

Court of Appeals of Arizona,
Division 1, Department A.

July 29, 2010.

474

Richard M. Romley, Maricopa County Attorney By Arthur Hazelton, Deputy County Attorney, Criminal Appeals/Capital Litigation Section, Phoenix, Attorneys for Appellant.

James J. Haas, Maricopa County Public Defender By Edith M. Lucero, Deputy Public Defender, Phoenix, Attorney for Appellee.

## OPINION

HALL, Judge.

¶ 1 The state appeals from the trial court's order granting Gustavo Mendoza–Ruiz's (defendant) motion to suppress a handgun that a police officer removed from defendant's truck. For the reasons that follow, we vacate the suppression order.

### FACTS AND PROCEDURAL BACKGROUND

¶ 2 The evidence presented at the suppression hearing is as follows.[1] In the early morning hours of November 1, 2008, Officer N.D. of the Phoenix Police Department responded to a report of two men in a pickup truck stealing a spare tire. N.D. found a Ford F–150 pickup truck matching the description of the men's vehicle in the parking lot of a restaurant located near the intersection of East Van Buren and 24th Streets. As the officer looked in the bed of the truck and viewed the spare tire, defendant and his friend walked out of the restaurant and approached her. When defendant asked N.D. what she was doing, she replied that she was "looking for a spare tire," and he said that "it was his truck and his keys were locked inside of the vehicle."

¶ 3 At that point, N.D. ordered the suspects to sit down on the ground near the truck until other officers arrived to assist. When Officer J.M. arrived soon after, she and N.D. patted the suspects down and handcuffed them for investigative detention. The officers placed the subjects in separate patrol vehicles. After N.D. told her that defendant's keys were locked in the truck, J.M. and N.D. looked in the window and verified that the keys were in the cab. The officers also observed a holstered handgun shoved next to the driver's seat. On orders from her sergeant, J.M. called a locksmith to access the cab. The officers retrieved the gun, but did not impound the truck because defendant asked that they leave it parked in the lot. J.M. testified that when she arrested defendant and secured the gun, she was not aware that defendant was a prohibited possessor.

¶ 4 At defendant's trial for third-degree burglary, a class four felony, and misconduct involving weapons (prohibited possessor), a class four felony, the trial court ordered the gun suppressed, reasoning that "the seizure of the hand gun was in violation of the [F]ourth [A]mendment" based on *Arizona v. Gant*, —— U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). The trial court granted the state's motion to dismiss the case without prejudice. The state timely appealed the

---

1. In reviewing a motion to suppress, we review only the facts presented to the superior court at the suppression hearing. *State v. Blackmore*, 186 Ariz. 630, 631, 925 P.2d 1347, 1348 (1996). We view those facts "in the light most favorable to sustaining" the superior court's decision. *State v. Dean*, 206 Ariz. 158, 161, ¶ 9, 76 P.3d 429, 432 (2003).

suppression order. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution, and Arizona Revised Statutes (A.R.S.) sections 12–120.21(A)(1) (2003), 13–4031, and –4032(6) (2010).

## DISCUSSION

¶ 5 The state claims that the trial court erred by granting defendant's motion to suppress evidence. Specifically, it contends that the court erred by "concluding the police did not have authority to seize the handgun for the safety of the general public in their community caretaking function." We agree.

■ ¶ 6 We review a trial court's denial of a motion to suppress a confession for "clear and manifest error," the equivalent of abuse of discretion. *State v. Newell*, 212 Ariz. 389, 396 & n. 6, ¶ 22, 132 P.3d 833, 840 & n. 6 (2006). In reviewing a motion to suppress, we defer to the superior court's determinations of the credibility of the officers and the reasonableness of the inferences they drew. *State v. Gonzalez–Gutierrez*, 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996). But we review the superior court's legal decisions de novo. *Id.*

■ ¶ 7 The United States and Arizona Constitutions prohibit all unreasonable searches and seizures. *See* U.S. Const. amends. IV, XIV; Ariz. Const. art. II, § 8. Warrantless searches "are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." *Dean*, 206 Ariz. at 161, ¶ 8, 76 P.3d at 432 (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)).

■ ¶ 8 The "community caretaker" doctrine allows admission of evidence discovered without a warrant when law enforcement engages in "community caretaking functions" intended to promote public safety. *State v. Organ*, 225 Ariz. 43, 46, ¶ 12, 234 P.3d 611, 614 (2010) (citing *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973)). Such caretaking functions are lawful with respect to automobiles in part "because of the extensive regulation of motor vehicles by states." *Id.* This function justifies a warrantless entry if "the intrusion is suitably circumscribed to serve the exigency which prompted it." *Id.* at ¶ 14 (internal quotations omitted). The standard for evaluating the appropriateness of its exercise is reasonableness; the question is whether a "prudent and reasonable officer [would] have perceived a need to act in the proper discharge of his or her community caretaking functions[.]" *Id.* at ¶ 15 (quoting *People v. Ray*, 21 Cal.4th 464, 88 Cal.Rptr.2d 1, 981 P.2d 928, 937 (1999)).

■ ¶ 9 The reasonableness standard arises from a police officer's status as a "jack-of-all-emergencies," who is "expected to aid those in distress, combat actual hazards, prevent potential hazards from materializing, and provide an infinite variety of services to preserve and protect community safety." *United States v. Rodriguez–Morales*, 929 F.2d 780, 784–85 (1st Cir.1991) (quoting W. LaFave, *Search and Seizure* § 5.4(c) (2d ed.1987)). These caretaking activities do not violate the Fourth Amendment if they are warranted "either in terms of state law or sound police procedure." *Id.* at 785 (citing *Cady*, 413 U.S. at 447, 93 S.Ct. 2523).

■ ¶ 10 The United States Supreme Court has not decided whether actions taken pursuant to the community caretaker function may be Fourth Amendment searches allowable by an exigency or, instead, are not searches at all. *See Cady*, 413 U.S. at 442 n. *, 93 S.Ct. 2523 (noting that the Court "need not decide" whether unlocking a car for a caretaking function "constitute[d] a 'search' within the meaning of the Fourth Amendment" if "only an intrusion, into an area in which an individual has a reasonable expectation of privacy, with the specific intent of discovering evidence of a crime constitutes a search"); *South Dakota v. Opperman*, 428 U.S. 364, 370 n. 6, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). It is now well-settled that a search implicates the Fourth Amendment only when officials' conduct infringes "an expectation of privacy that society is prepared to consider reasonable." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). Some courts and commentators have entertained the idea that

caretaking actions are not searches for the purposes of the Fourth Amendment because of their non-investigatory nature, and are thus "outside the warrant requirement and the probable cause standard." *Rodriguez–Morales*, 929 F.2d at 785 (citing *Colorado v. Bertine*, 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987)); *see also Lockhart–Bembery v. Sauro*, 498 F.3d 69, 76 n. 6 (1st Cir.2007); *United States v. Coccia*, 446 F.3d 233, 238 n. 6 (1st Cir.2006); Michael R. Dimino, Sr., *Police Paternalism: Community Caretaking, Assistance Searches, and Fourth Amendment Reasonableness*, 66 Wash. & Lee L.Rev. 1485, 1495 n. 40 (2009) (collecting relevant cases); Debra Livingston, *Police, Community Caretaking, and the Fourth Amendment*, 1998 U. Chi. Legal F. 261, 271–78 (1998) ("[T]he probable-cause-and-warrant framework is often plainly inapposite to consideration of the reasonableness of community caretaking intrusions."). Conversely, other authorities hold that such an action qualifies as a search because of its intrusion on a recognizable privacy interest, but that the search is justified by the caretaking function as an exigency if it is reasonable. *See United States v. Maple*, 348 F.3d 260, 262 (D.C.Cir.2003) ("[A]ny deliberate governmental intrusion into a closed space—opening a door or a closed compartment—is a search regardless of the reasons for the intrusion."); *People v. Luedemann*, 222 Ill.2d 530, 306 Ill.Dec. 94, 857 N.E.2d 187 (2006); *Cannon v. United States*, 838 A.2d 293, 298 (D.C.2003). On the record before us, we need not choose between these approaches because, as in *Cady*, even if the officers' actions constituted a search, the search was not unreasonable under the Fourth Amendment. *See United States v. Knights*, 534 U.S. 112, 118, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("The touchstone of the Fourth Amendment is reasonableness....").

¶ 11 In *Cady*, a defendant police officer had a one-car accident while intoxicated. 413 U.S. at 435–36, 93 S.Ct. 2523. The officers investigating the crash had reason to believe that the defendant was required to carry his service revolver at all times, but could not find it in the passenger compartment of his car or on his person. *Id.* at 436, 93 S.Ct. 2523. While looking in the trunk for the service weapon, officers discovered various bloody items linking the defendant to a murder. *Id.* The Court held that entering the trunk was not unreasonable because, as in this case, the officers' attempts to recover the weapon were reasonable to "protect the public from the possibility that a revolver would fall into untrained or perhaps malicious hands." *Id.* at 443, 93 S.Ct. 2523.

¶ 12 Here, the officers entered the cab of the pickup and removed the gun because of their legitimate concern for public safety. At the suppression hearing, Officer J.M. said that the gun was clearly visible from outside the cab of the vehicle. She testified that the area where the truck was parked was busy because of a nearby restaurant and nightclub. She also testified that the restaurant where the truck was parked was a "location of high crime, shootings, [and] aggravated assaults." As the Supreme Court did in *Cady*, we conclude it was reasonable for Officers N.D. and J.M. to enter the vehicle and secure the firearm to protect public safety. In fact, the public danger here was even more pressing than in *Cady*, in which the firearm was not visible because it was in the trunk, and the car was crashed on the side of a rural road, rather than in a busy, high-crime neighborhood.

¶ 13 We also reject defendant's argument that the community caretaker doctrine is "interchangeable" with the public safety exception to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and therefore only relates to the admissibility of statements and not physical evidence. The public safety exception was most notably expressed in *New York v. Quarles*, 467 U.S. 649, 655–56, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), in which the Court held that *Miranda* did not require suppression of a defendant's answer when questioned by a police officer about where he hid a gun while being pursued in a grocery store because the question was "reasonably prompted by a concern for the public safety." But the two doctrines are not interchangeable because they pertain to two entirely different rules. *Quarles* allowed a public safety exception to the general rule that a suspect's statement made during custodial interrogation is not admissible unless

he is first informed of his Fifth Amendment rights. *Id.* at 655–56, 104 S.Ct. 2626. The community caretaker function as applied in *Cady* concerns the admissibility of physical evidence under the Fourth Amendment. 413 U.S. at 441, 93 S.Ct. 2523.

¶ 14 Finally, defendant asserts that the trial court made a factual finding that public safety was not at risk after considering the officers' testimony at the suppression hearing. We disagree. Rather, the trial court simply cited *Gant* as authority for its determination that the seizure of the handgun violated the Fourth Amendment.

¶ 15 The trial court's reliance on *Gant* was misplaced. Notwithstanding some degree of factual similarity to this case, *Gant* does not preempt the community caretaker function under these circumstances. In *Gant*, the Supreme Court upheld the suppression of cocaine found in the search of a defendant's car while he was "handcuffed[ ] and locked in the back of a patrol car" after his arrest for driving with a suspended license. 129 S.Ct. at 1714. The Court reasoned that holding such a search to be reasonable was inconsistent with the purposes for allowing a search incident to arrest; namely, "protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." *Id.* at 1716 (citing *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)). The Court concluded that police were authorized "to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* at 1719.

¶ 16 Unlike in *Gant*, the officers' action in this case was not a search incident to arrest for the purpose of ensuring officer safety, but instead was intended to safeguard public safety pursuant to the officers' community caretaking function. *Gant's* rationale for suppression, that officer safety is not at risk when the subject is secured and outside reaching distance, does not apply here because defendant's detention in the patrol car did not remove the ongoing threat to public safety presented by the handgun left in his vehicle, particularly when defendant had requested that his truck be left in the parking lot. As discussed in ¶ 12, *supra*, the firearm was clearly visible through the window of the truck's cab in a busy, high-crime neighborhood, justifying entry to secure it for public safety. *Gant* neither explicitly nor implicitly abrogated the application of the community caretaking function in circumstances such as those present here.

## CONCLUSION

¶ 17 We vacate the trial court's order to suppress the handgun.

CONCURRING: MICHAEL BROWN, Presiding Judge and DANIEL A. BARKER, Judge.