NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JOHN HYRAM THOMPSON, JR., *Appellant*.

No. 1 CA-CR 18-0609
FILED 5-28-2019

Appeal from the Superior Court in Yavapai County
No. P1300CR201501038
The Honorable Patricia A. Trebesch, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Nicholas Chapman-Hushek
*Counsel for Appellee*

M. Alex Harris PC, Chino Valley
By M. Alex Harris
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Jennifer M. Perkins joined.

---

**B R O W N**, Judge:

¶1  John Hyram Thompson, Jr. appeals from his convictions and sentences for transportation of a narcotic drug for sale (heroin) and possession or use of drug paraphernalia. He argues the superior court erred in denying his motion to suppress evidence obtained from a warrantless search of his car. For the following reasons, we affirm.

## BACKGROUND

¶2  On May 6, 2015, Detective Scott received word from a confidential informant ("CI") that Thompson would be traveling toward Yavapai County with heroin. The CI told Detective Scott that Thompson had a "regimented . . . routine" of driving to Phoenix every Friday to purchase between one and one-and-one-half ounces of heroin from a supplier named "Donny" and would return to Yavapai County the same day before traffic became heavy. According to the CI, Thompson was known as a "machine" because his activity was so regimented. The CI had seen Thompson at the supplier's house on prior occasions. The CI planned to be at the "drug house" on Friday, May 8, and would contact Detective Scott when Thompson appeared. On May 8, the CI indeed notified Detective Scott that Thompson was at the house with a woman, who police later learned was his wife. The CI told Detective Scott that Thompson would be traveling back to Yavapai County between 10 a.m. and 3 p.m. in a grey passenger car with a missing hood, and he would have heroin with him.

¶3  Detective Scott coordinated with other law enforcement officers located along Interstate 17 to surveil Thompson's car as he traveled back to Yavapai County. When Detective Scott saw Thompson's hoodless car driving in the direction the CI predicted within the time frame predicted, he notified the other officers. Detective Warburton initiated a traffic stop. He explained to Thompson he stopped him because Thompson's car had a darker window tint than legally allowed and there was a GPS device affixed to the center of the windshield, violations of

2

Arizona Revised Statutes section 28-959.01. During the stop, another detective ran a K-9 along the car to sniff for drugs. Although the dog reportedly alerted to the car, on appeal the State concedes there was no alert. Officers then searched the car; however, their search did not reveal any drugs. During the detention, Thompson's wife informed Detective Scott that she had heroin on her person. She eventually retrieved 1.31 ounces of heroin and gave it to the officers.

¶4        As pertinent here, Thompson moved to suppress the heroin, asserting there was not "sufficient cause to detain and search" based on the available facts, including the information provided by the CI and the fact that the K-9 did not alert. The motion included a document purportedly authored by Thompson's alleged expert ("Falco Report"), which described the K-9 search, concluded there was no alert, and stated the search was unlawful.

¶5        The primary issue at the suppression hearing was whether the CI was reliable and whether the information from the CI provided probable cause to conduct the stop and search of Thompson's car. The superior court heard the evidence recounted above. In addition, Detective Scott testified that an informant is deemed reliable when he or she provides information on more than one occasion "that is vetted or confirmed through independent police investigation." He explained that he knew this CI was reliable from prior cases. Finally, Detective Smith, the CI's control detective, testified that the CI was deemed reliable after having completed two successful "reliability buys," where the CI purchased drugs from a supplier in a controlled environment set up by the police.

¶6        The superior court denied the motion to suppress, finding there was sufficient evidence the CI was reliable and therefore the officers had probable cause to stop and search Thompson's car. The court declined to hear testimony regarding the failed dog alert, explaining it was unnecessary because other evidence provided probable cause to stop and search the vehicle. Thus, the court reasoned the K-9 was "simply another tool in an effort to facilitate an already legal search of the vehicle." After a bench trial, Thompson was convicted of transportation of a narcotic drug for sale (heroin) and possession or use of drug paraphernalia and sentenced to 11 years' imprisonment. This timely appeal followed.

**DISCUSSION**

**¶7**      We note at the outset the deficiencies of Thompson's appellate brief.  Thompson does not develop any arguments, cite relevant legal authority, provide any meaningful record citations, or identify specific statements or facts to support the issues he identifies.  An opening brief must include, for each issue, the applicable standard of appellate review, with citations to supporting legal authority, and specific references to the record on appeal.  Ariz. R. Crim. P. 31.10(a)(7).  It must also include significant arguments setting forth an appellant's position on each issue raised.  *See State v. Carver*, 160 Ariz. 167, 175 (1989).  Because Thompson's brief fails to comply with these requirements, we could find that he has abandoned all issues he attempts to raise on appeal.  *See id.* ("Failure to argue a claim usually constitutes abandonment and waiver of that claim."). In our discretion, however, we decline to apply waiver here.

**¶8**      We review the denial of a motion to suppress for an abuse of discretion. *Brown v. McClennen*, 239 Ariz. 521, 524, ¶ 10 (2016).  In doing so, we defer to the superior court's determination of the witnesses' credibility, *State v. Mendoza-Ruiz*, 225 Ariz. 473, 475, ¶ 6 (App. 2010), and we will uphold the ruling if it is legally correct for any reason, *State v. Huez*, 240 Ariz. 406, 412, ¶ 19 (App. 2016).  "[W]e view the facts in the light most favorable to upholding the trial court's ruling and consider only the evidence presented at the suppression hearing."  *State v. Teagle*, 217 Ariz. 17, 20, ¶ 2 (App. 2007).  We review de novo the court's ultimate determination that a search complies with the dictates of the Fourth Amendment.  *State v. Adams*, 197 Ariz. 569, 572, ¶ 16 (App. 2000).

**¶9**      The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches and seizures are generally unreasonable, "subject only to a few specifically and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).  Under the "automobile exception" to the warrant requirement, law enforcement officers may lawfully search a vehicle if "probable cause exists to believe the vehicle contains contraband," even in the absence of exigent circumstances. *State v. Reyna*, 205 Ariz. 374, 378, ¶ 15 (App. 2003).  "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983).  "Probable cause exists when the facts known to a police officer 'would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present.'" *State v. Sisco*, 239 Ariz. 532, 535, ¶ 8 (2016) (citation omitted).

¶10   Thompson vaguely questions whether the superior court considered the reliability of the CI, which we construe as challenging the court's finding that there was "no basis to challenge the reliability of the information . . . provided by the informant."

¶11   A tip from a reliable informant may provide grounds for probable cause to conduct a search if, given the totality of the circumstances surrounding the tip, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. The totality-of-the-circumstances test requires a court to consider all circumstances surrounding the tip, including the veracity and basis of the informant's knowledge. *Id.*; *see also State v. Buccini*, 167 Ariz. 550, 556 (1991) (adopting *Gates*).

¶12   Here, the record supports the superior court's finding that the CI was reliable. Detective Smith considered the CI reliable after completion of two "reliability buys." The CI gave Detective Scott sufficiently specific information to allow a reasonable officer to believe with a fair probability that contraband would be found in Thompson's car. The basis of the CI's knowledge was established: Thompson had a regimented practice of traveling to Phoenix to purchase between one and one-and-one-half ounces of heroin every Friday, and the CI was present at the supplier's house when Thompson arrived with his wife on May 8. Moreover, Detective Scott substantiated the veracity of the CI's information. The CI gave Detective Scott a detailed description of Thompson, his wife, the clothes they were wearing, and the car they were driving. The CI also specified the approximate timeframe when Thompson would be traveling to Yavapai County with the heroin. Thompson did in fact travel to Yavapai County during the estimated timeframe, and arresting officers verified the predictive parts of the tip—his route, his clothes, the car he was driving, and who he was with. *See Draper v. United States*, 358 U.S. 307, 333 (1959) (finding probable cause when police personally verified every part of the tip, except whether the defendant was carrying drugs, prior to the search); *see also Gates*, 462 U.S. at 242–43. The officers verified enough information from the tip that, combined with the CI's basis of knowledge and reliability, the totality of the circumstances established probable cause to believe Thompson was traveling with heroin when they stopped his car and conducted a search. *See Gates*, 462 U.S. at 222–23.

¶13   Thompson also argues the superior court abused its discretion by failing to consider the Falco Report, which indicated the K-9 failed to alert. As the court explained, a K-9 alert would have simply provided another level of probable cause supporting a search of the car.

The detectives had probable cause to stop and search Thompson's car before use of the K-9. *See Reyna*, 205 Ariz. at 375, ¶ 5. Thompson offers no authority for the proposition that, under these circumstances, the failure of a K-9 to alert would extinguish the probable cause developed from the other evidence. Moreover, to the extent Thompson suggests the court failed to consider the relevance of "the pretext stop," the same reasoning applies— the probable cause developed from the CI's tip was more than sufficient to justify the traffic stop. *See Whren v. United States*, 517 U.S. 806, 812 (1996) (explaining that the Court previously "dismissed the idea that an ulterior motive might serve to strip the agents of their legal justification" for the stop); *see also Teagle*, 217 Ariz. at 22–23, ¶ 20 (finding reasonable suspicion is sufficient to permit a traffic stop).

## CONCLUSION

**¶14**         Because the superior court did not abuse its discretion in denying the motion to suppress, we affirm Thompson's convictions and sentences. We decline his request to independently search the record for fundamental error. *See State v. Scott*, 187 Ariz. 474, 477 (App. 1996) ("When counsel has filed an advocate's brief on behalf of a defendant, it is neither the role nor the duty of this court to search the record for appealable issues; that is the responsibility of defendant's attorney.").

