NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

ZION ZACHARY KAUFFMAN, *Appellant*.

No. 1 CA-CR 22-0362
FILED 8-1-2023

Appeal from the Superior Court in Mohave County
No. S8015CR202001264
The Honorable Billy K. Sipe, Jr., Judge, *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Andrew Reilly
*Counsel for Appellee*

Carr Law Office PLLC, Kingman
By Sandra Carr
*Counsel for Appellant* [1]

Zion Zachary Kauffman, Florence
*Appellant*

---

[1] Appearing as advisory counsel to Zion Zachary Kauffman, Kingman, *Pro Per*.

---

**MEMORANDUM DECISION**

Judge Andrew M. Jacobs delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Angela K. Paton joined.

---

J A C O B S , Judge:

¶1            Zion Zachary Kauffman appeals from his convictions and sentences for two counts of aggravated assault and one count of child abuse.  We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2            In 2020, Kauffman resided on two-and-one-half acres of undeveloped rural land he owned in Golden Valley, Mohave County. Kauffman camped there with his ex-wife; another woman (Mother); and 8-month-old Z, who was Mother's and Kauffman's child.

¶3            Mother took Z to an emergency room on November 3, 2020, for a head injury.  Imaging showed Z had been shot in the head with a pellet-like object.  Doctors intubated Z, relieved the pressure, and flew Z to a Las Vegas-area trauma hospital for treatment.  At the hospital, Mother told police about the others at the campsite.

¶4            Kauffman at first claimed not to have shot Z.  Kauffman told police in a phone interview that he was collecting firewood with Mother and heard what sounded like air soft rifle shots fired.  In his original narrative, as Mother grabbed Z, Kauffman grabbed Z's chair, and they went back to the campsite where he noticed Z's injury.

¶5            Based on the information from Mother and Kauffman, police obtained and executed a search warrant.  Searching the vehicles and tents at Kauffman's campsite, the police located a pellet gun rifle and pellets under clothes in the trunk of a car, and a car seat and small dress in the tent, both saturated with blood.  There was a bullet hole in the top canopy of the car seat.  The police seized Kauffman's cell phone.  A forensic examination of the phone revealed that Kauffman sent a text the morning after Z was shot saying Z "hit [their] head on a rock in a tent," to which the recipient responded, "I thought [Z] got hit by a BB from someone shooting out there."

Kauffman replied, "I was already drunk and asleep when everything happened, so I don't know exactly what happened."

¶6 Two police officers interviewed Kauffman in a patrol car at his campsite, recorded by body camera, during which Kauffman admitted he may have accidentally shot Z while shooting quail. A grand jury indicted Kauffman for aggravated assault, child abuse, and tampering with evidence.

¶7 Kauffman moved to suppress the air rifle pellets, copper-coated steel BBs, an iPad, and two cell phones because the vehicles from which the items came were not included in the warrant or located on Kauffman's property. Kauffman also moved to suppress his statements to police, and the timeline and sequence of events depicted in the body camera recording of his interview, relying on a specific physical/sexual threat he alleged a different officer made toward Kauffman's ex-wife before the interview. The State argued the vehicle search was conducted in good faith, that Kauffman voluntarily spoke to police after waiving his *Miranda* rights and that video showed the interviewing officer made no promises or threats.

¶8 Six law enforcement witnesses and Kauffman testified at the evidentiary hearing on Kauffman's motions to suppress. The officers testified they neither made the alleged threat against Kauffman's ex-wife, nor heard anyone else make the threat. Kauffman testified he talked to police on several occasions on the day they executed the search warrant, during which an officer threatened Kauffman's ex-wife. He also testified that during his later police interview in the patrol car with two different officers, one officer talked about taking all three of them to jail for something that may have been an accident, which Kauffman understood as a promise to not take Kauffman to jail if he said the shooting was an accident. The State argued the body camera video showed Kauffman mentioning an accident in his police interview before the officer made the statement Kauffman contended was a promise of leniency.

¶9 The court declined to suppress Kauffman's statements. It found them all voluntary because "the officers' testimony [was] more credible than [Kauffman's] testimony," every officer testified that no one made the alleged threat, the threat was not made during the investigation, and the interviewing officer did not cause Kauffman to make involuntary statements. The court acknowledged that the officer used profanity and had a harsh interview technique and tone, but found Kauffman's statements voluntary. The court noted Kauffman first raised the possibility

of an accident and because the entire interaction was on the body camera video, the court could see Kauffman's reactions and saw no sign that Kauffman's will was overborne.

¶10 The court also denied Kauffman's motion to suppress evidence from vehicles outside the warrant's geographic scope. While the two cars the officers searched were not on Kauffman's property, the area was remote and lacked barriers delineating property lines, and there appeared to be only two vehicles at Kauffman's campsite. Based on the officers' testimony and evidence, the court found the officers' belief that the two vehicles were on Kauffman's property "objectively reasonable." Because the officers believed in good faith that the vehicles were on Kauffman's property when searched, the court upheld the search.

¶11 During a six-day trial, Kauffman's counsel told the jury in opening statements that the officers' threats and promises are "all on Axon" body camera video. Kauffman testified about collecting firewood and hearing gunshots, and while admitting he saw that Z had been shot when back at camp, he likewise acknowledged never calling 911. He explained that instead, he called a cab so Mother and Z could go to a hospital while he remained at the camp drinking alcohol. Kauffman also testified he lied under duress to police when he said he may have accidentally shot Z. The jury asked Kauffman whether he was Mirandized and he testified that he did not recall being so advised. Kauffman testified about the statement by one officer to his ex-wife that Kauffman considered a threat, and the statement during his interview in the patrol car that he considered a promise of leniency, which he asserted caused him to falsely admit to possibly accidentally shooting Z.

¶12 Officer testimony established that Kauffman was read and waived his *Miranda* rights and voluntarily spoke to police during the interview. The State showed the body-camera recording of the interview to the jury.

¶13 The evidence regarding Z's ongoing medical treatment by six different specialists established that Z, who was otherwise healthy before being shot, now has cerebral palsy and other movement disorders, impaired vision, and lifelong increased risk for seizures and other developmental issues as a result of the incident.

¶14 After the State rested, Kauffman moved for a directed verdict under Rule 20 rearguing voluntariness that the court denied. The court explained it had already ruled on voluntariness, and had seen nothing on the video or about Kauffman's reaction that showed his will was overborne, that he was giving false statements, or that his statements were involuntary notwithstanding the officer's aggressive interview technique. The court stated that the jury would be instructed it could consider a statement involuntary and disregard it.

¶15 Kauffman's counsel argued voluntariness vigorously in closing. The jury found Kauffman guilty of two counts of aggravated assault and one count of child abuse, but found him not guilty of tampering with evidence.

¶16 Kauffman filed two post-trial motions, a motion for acquittal on the child abuse count and a motion for new trial, reasserting his involuntariness arguments. The court denied the motion for new trial, explaining it had already ruled on the issues it raised. The court had held a voluntariness hearing and viewed the body camera recording repeatedly. While the interrogating officer's technique was harsh, calling Kauffman a "piece of shit," the court explained Kauffman handled the situation well, such that nothing made his statements involuntary.

¶17 The court sentenced Kauffman concurrently to presumptive terms of 7.5 years imprisonment for Counts 1 and 2, aggravated assault, and a maximum of 24 years for Count 3, child abuse.

¶18 Kauffman timely appealed, and we have jurisdiction under Article VI, Section 9 of the Arizona Constitution, and A.R.S. §§ 12–120.21(A)(1), 13–4031, and 13–4033(A).

## DISCUSSION

¶19 On appeal, Kauffman argues the arresting officers violated his rights and complains of a course of "illegal and unlawful and wrong things the officers and court has [sic] done":

> The officer did not look to see where is 2.5 Ars. (sic) [acres] started nor ended, they left evidence behind, they used excessive force, the keep turning on and off the body cam, the officers was prejudice [sic] against [Kauffman] as a jew, they violated all of his amendments and rights, violated his ADA law, search and seizure without a search warrant violated his sovereignty and the judge should have dismissed the case….

5

He also says: "I am being hurt [in the exercise of] my . . . rights, [my] sovereignty has been violated, my due process, double jeopardy, not getting a fair trial/hearing, false arrest, imprisonment, illegal and unlawful search and seizure," "not having a warrant," "illegal sentence," "suppression of evidence," "threat to my family," "excessive force." In a supplemental filing, Kauffman references his opening brief, "case law 3:13CR72, 13-7120," and "*State v. Bolt*."

¶20        The State maintains that Kauffman waived his arguments by failing to explain them or support them with legal authority, relying on Arizona Rule of Criminal Procedure 31.10(a)(7), and *State v. Bolton*, 182 Ariz. 290, 298 (1995), and *State v. Felkins*, 156 Ariz. 37, 38 n.1 (App. 1988). The State further argues sufficient evidence supports the convictions, the police properly applied for and obtained a warrant, and the superior court correctly held the officers acted in good faith in searching the vehicles. Kauffman's reply does not address the State's arguments or further elaborate his own.

¶21        The core of Kauffman's position is his objection to the superior court's denial of his motions to suppress the searches and the voluntariness of his admission to police. "We review the denial of a motion to suppress evidence for abuse of discretion, considering the facts in the light most favorable to sustaining the ruling." *State v. Valenzuela*, 239 Ariz. 299, 302 ¶ 9 (2016) (citing *State v. Wilson*, 237 Ariz. 296, 298 ¶ 7 (2015)). We defer to the superior court's determinations of the officers' credibility "and the reasonableness of the inferences they drew," but consider the superior court's legal decisions *de novo*. *State v. Mendoza–Ruiz*, 225 Ariz. 473, 475 ¶ 6 (App. 2010); *see State v. Cordova*, 198 Ariz. 242, 243–44 ¶¶ 4–5 (App. 1999) (stating we do not reverse convictions or findings if they are supported by substantial evidence). We will affirm the superior court's decision if it is legally correct for any reason. *Valenzuela*, 239 Ariz. at 310 ¶ 35 (citing *State v. Roseberry*, 237 Ariz. 507, 508 ¶ 7 (2015)).

¶22        Here, the search warrant was the subject of a suppression hearing at which six officers testified. Kauffman does not address the superior court's resolution of this issue or point to anything that undermines the court's findings of objective good faith in searching his vehicle. *See Mendoza–Ruiz*, 225 Ariz. at 475 ¶ 6; *State v. Baggett*, 232 Ariz. 424, 426 ¶ 7 (App. 2013). Kauffman shows no error of law or abuse of discretion, and we are required to view the facts in the light most favorable to upholding the court's ruling. *See Valenzuela*, 239 Ariz. at 302 ¶ 9.

¶23        Kauffman also makes a number of references in his opening brief to the threat he alleges coerced his concession that he might have shot Z, but does not develop a theory of error in his brief for us to consider. The alleged threat was substantially discussed at trial and was the subject of multiple rulings in the superior court. Similarly, Kauffman does not develop a claim of error through his assertion that "they keep turning on and off the bodycam." He does not explain how switching the bodycam on and off related to the threat he alleges or the voluntariness of his statements. These undeveloped contentions either fail for lack of necessary specificity or are waived. *See* Ariz. R. Crim. P. 31.10(a)(7) (requiring "supporting reasons for each contention," "citations of legal authorities and appropriate references to the portions of the record on which the appellant relies"); *Bolton*, 182 Ariz. at 298 (determining claim on appeal was waived because of insufficient argument). Though Kauffman cites *State v. Bolt*, a case applying the exclusionary rule, *Bolt* discusses exigent circumstances and the federal independent source exception, and is not relevant to the facts and issue of objective good faith here. *See* 142 Ariz. 260, 263–69 (1984).

¶24        To the extent Kauffman contends there was insufficient evidence to support the jury's verdict because of his allegations involving a threat, that issue was for the jury to resolve. *See State v. Williams*, 209 Ariz. 228, 231 ¶ 6 (App. 2004) (explaining that jury is tasked with "weigh[ing] the evidence and determin[ing] the credibility of the witnesses."); *accord State v. Cid*, 181 Ariz. 496, 500 (App. 1995) (discussing that jury's function is to weigh evidence and determine credibility).

¶25        Kauffman testified about the threat. The jury heard about the aggressive interview, saw the recording, and heard testimony from an officer about the body cam being on and off. Multiple officers testified they did not make the alleged threat and that Kauffman had not complained about a threat to any of them. The jury was instructed that "[i]n deciding the facts of this case, you should consider what testimony to accept, and what to reject," and "[y]ou may accept everything a witness says, or part of it, or none of it." *See State v. Allen*, 253 Ariz. 306, 358 ¶ 193 (2022). We presume the jury follows the court's instructions. *State v. Gallardo*, 225 Ariz. 560, 569 ¶ 40 (2010). The jury was free to judge the credibility of the evidence and accept or reject the officers' and Kauffman's testimony in whole or in part and "we will not second-guess" the jury's credibility determination, *Cid*, 181 Ariz. at 501.

## CONCLUSION

¶26        Because Kauffman has not shown an error of law or that the court abused its discretion, we affirm his convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:    AA